88 P.3d 395 (2004)
151 Wash.2d 303
Rebecca HAMM, Petitioner,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.
No. 73614-6.
Supreme Court of Washington, En Banc.
Argued October 22, 2003.
Decided April 22, 2004.
Graham Lundberg & Perschel, Kenneth Dore, Seattle, for Petitioner.
Reed McClure, William Hickman, Pamela Okano, Todd & Wakefield, Robert Mannheimer, Seattle, Mark Koenig, c/o John Roche, Northport, NY, for Respondent.
Debra Stephens, Gary Bloom, Bryan Harnetiaux, Spokane, for Amicus Curiae (Washington State Trial Lawyers Assn).
FAIRHURST, J.
A no-fault motorist was injured in a car accident with an uninsured motorist (tortfeasor). She recovered both personal injury protection (PIP) benefits and uninsured motorist (UIM)[1] benefits from the same insurance carrier. After arbitration of the UIM claim was complete, the insurance carrier *396 took an offset, in an amount equal to the PIP benefits it previously paid, against the amount it owed in its capacity as UIM carrier. We extend our earlier decisions in Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632, 966 P.2d 305 (1998), and Winters v. State Farm Mutual Automobile Insurance Co., 144 Wash.2d 869, 31 P.3d 1164, 63 P.3d 764 (2001), and hold that in order to take a PIP reimbursement offset, the insurance carrier must pay a pro rata share of the legal expenses incurred by the insured to arbitrate the UIM claim.

I. FACTS AND PROCEDURAL HISTORY
In November 1994, Rebecca Hamm was injured in an automobile accident with an uninsured motorist. Hamm qualified as an insured under a policy with State Farm Mutual Automobile Insurance Co. (State Farm) for both PIP benefits and UIM benefits. She received $8,669.71 in PIP benefits from State Farm for medical expenses she incurred as a result of the accident. Rather than pursue her claim against an uninsured motorist, Hamm immediately presented a UIM claim to State Farm. After attempts to settle the UIM claim proved unsuccessful, Hamm pursued arbitration as provided in the State Farm policy. The arbitrator determined that Hamm's total damages, including medical expenses, were $16,000.00. From the $16,000.00 that State Farm owed to Hamm in its capacity as her UIM carrier it offset the amount it previously paid as her PIP carrier, and tendered her a check for the $7,330.29 balance.
The parties disputed the proper amount of the offset, and Hamm eventually brought an action for declaratory relief. The trial court permitted State Farm to offset the total amount of benefits it paid as PIP carrier from the amount of benefits that the arbitrator determined it was obligated to pay as UIM carrier. The trial court, citing Mahler, also required State Farm to pay its pro rata share of the legal expenses (which it set at $6,634.06) that Hamm incurred arbitrating the UIM claim. Because the PIP offset represented approximately 54 percent of the total recovery, State Farm was ordered to pay 54 percent of Hamm's legal expenses.
State Farm appealed the award of pro rata legal expenses, and the Court of Appeals reversed. Hamm v. State Farm Mut. Auto. Ins. Co., 101 Wash.App. 360, 3 P.3d 761 (2000). We accepted Hamm's petition for review, and remanded to the Court of Appeals for reconsideration in light of our recent decision in Winters. Hamm v. State Farm Mut. Auto. Ins. Co., 145 Wash.2d 1032, 42 P.3d 1278 (2002). On remand, the Court of Appeals considered Winters, concluded that it did not apply, and declined to amend its earlier opinion. Hamm v. State Farm Mut. Auto. Ins. Co., 115 Wash.App. 773, 60 P.3d 640 (2002). We once again accepted Hamm's petition for review and now review the Court of Appeals' decision not to apply Winters. Hamm v. State Farm Mut. Auto. Ins. Co., 149 Wash.2d 1017, 72 P.3d 762 (2003).

II. ISSUE
Does the pro rata sharing rule for legal expenses articulated in Mahler (recovery from a fully insured tortfeasor) and in Winters (combined recovery from an underinsured tortfeasor and a UIM carrier) apply when the tortfeasor is uninsured and the insured recovers only from a UIM carrier?

III. ANALYSIS
A. Background
Two separate and distinct types of insurance coverage are involved in this casePIP and UIM. PIP coverage generally provides benefits for the immediate costs of an automobile accident, including medical expenses and loss of income. UIM coverage, which functions separately from PIP coverage, covers all damages that the insured would have been entitled to receive from the tortfeasor, including the medical expenses, loss of income, and other damages that are also covered by PIP. See RCW 48.22.030(UIM),.085(PIP).
UIM and PIP coverages may overlap with each other and with any potential recovery from the tortfeasor. Although UIM and PIP carriers are permitted to account for any *397 eventual coverage overlap, accounting for overlapping coverage is accomplished differently for UIM carriers than for PIP carriers.
For purposes of UIM coverage, the insurance carrier is said to stand in the shoes of the tortfeasor, and payments made by the UIM carrier are treated as if they were made by the tortfeasor. Britton v. Safeco Ins. Co. of Am., 104 Wash.2d 518, 529, 707 P.2d 125 (1985); Winters, 144 Wash.2d at 880, 31 P.3d 1164. Accordingly, UIM carriers are entitled to set off the amount of any tortfeasor recovery from the amounts owed to an insured under a UIM policy.[2]Hamilton v. Farmers Ins. Co. of Wash., 107 Wash.2d 721, 728, 733 P.2d 213 (1987) (a UIM carrier "always is allowed to credit the full amount of the tortfeasor's liability coverage against the insured's damages"). UIM carriers do not need to pay a pro rata portion of the legal expenses the insured incurs to arbitrate a UIM claim in order to take a setoff. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 281, 876 P.2d 896 (1994) ("When a tortfeasor carries insurance, the claimant insured bears his or her own attorney fees in the arbitration proceedings. Thus, when the UIM insurer stands in the shoes of the uninsured tortfeasor, the claimant insured should likewise bear his or her own attorney fees." (citation omitted)).
In contrast, PIP carriers generally contract for a right to receive reimbursement of PIP benefits if an insured recovers from the tortfeasor, a UIM carrier, or both. While the insured pursues her tortfeasor and UIM claims, the PIP carrier provides benefits to cover the insured's immediate costs, such as medical expenses. If the insured subsequently recovers the total amount of her damages from another source (the tortfeasor, her UIM carrier, or both), the PIP coverage becomes redundant. Therefore, when the insured receives full recovery, the PIP carrier may seek reimbursement from its insured for the PIP benefits it previously paid. See Winters, 144 Wash.2d at 876, 31 P.3d 1164 ("the insured must be fully compensated before the insurer may recoup benefits paid").
Pursuant to Mahler and Winters, if the PIP carrier seeks reimbursement from the funds obtained through the insured's efforts, the PIP carrier must pay a pro rata share of the insured's legal expenses. Mahler, 135 Wash.2d at 436, 957 P.2d 632; Winters, 144 Wash.2d at 883, 31 P.3d 1164. As we discuss below, Mahler established this PIP pro rata sharing rule for cases where the tortfeasor is fully insured, and Winters extended the rule to cases where the tortfeasor is underinsured. This case presents the issue of PIP pro rata sharing in cases where the tortfeasor is uninsured.
1. Mahler and the Fully Insured Tortfeasor
In Mahler, the insured was injured by a fully insured tortfeasor. Her medical expenses were initially paid for by her PIP carrier. Subsequently, the insured recovered her full damages, including medical expenses, from the tortfeasor. Once the insured was fully compensated, her PIP carrier sought reimbursement of the PIP benefits it paid. We ruled that a PIP carrier seeking reimbursement from the fund created by the insured must pay a pro rata share of the legal expenses the insured incurred in order to recover from the tortfeasor. Mahler, 135 Wash.2d at 407, 436, 957 P.2d 632.
As explained in Mahler: "This equitable sharing rule is based on the common fund doctrine, which, as an exception to the American Rule on fees in civil cases, applies to cases where litigants preserve or create a common fund for the benefit of others as well as themselves." Id. at 426-27, 957 P.2d 632. The "common fund" in Mahler consisted of the recovery the insured obtained from the tortfeasor only. From this fund, the insured was compensated and the PIP carrier was reimbursed. Because the PIP carrier reimbursed itself from a fund that the insured created, the PIP carrier was obligated to pay *398 a pro rata share of the legal expenses incurred by the insured to create the fund. Id. at 436, 957 P.2d 632.
2. Winters and the Underinsured Tortfeasor
In Winters, the insured, Sarah Winters, was injured by an underinsured tortfeasor.[3] Her immediate medical expenses were covered by payments from her PIP carrier. Winters then sought recovery from the tortfeasor and recovered the maximum limits of the tortfeasor's liability coverage. Because the tortfeasor recovery did not fully compensate her, she also pursued a UIM claim.
Unlike the insured in Mahler, Winters was not fully compensated until she recovered from both the tortfeasor and her UIM carrier. Once she was fully compensated, her PIP carrier was able to seek reimbursement for the PIP benefits it paid, subject to its obligation to pay a pro rata share of the legal expenses incurred by Winters in creating the fund. Winters, 144 Wash.2d at 881, 31 P.3d 1164. As explained in Winters, "[t]hese pooled funds became the common fund from which the PIP insurer was able to recoup payments it had made." Id. Winters clarified that the pro rata sharing rule articulated in Mahler is based on equitable principles, not specific policy language, and applies to PIP reimbursements from UIM recoveries as well as from tortfeasor recoveries. Id. at 878-79, 881, 31 P.3d 1164.
In cases like Winters, where PIP coverage and UIM coverage are provided by the same insurance carrier, the reimbursement to the PIP carrier typically comes in the form of an offset applied to the UIM obligation. Even though the offset appears to result in a reduction to the UIM obligation, the offset functions as a mechanism to account for the PIP reimbursement and is available only when the same insurance carrier provides both PIP and UIM coverage. In cases where the PIP and UIM carriers are separate companies, the PIP carrier remains entitled to receive actual reimbursement, and the UIM carrier remains obligated to pay the entire amount of the UIM award. In such cases, no opportunity for an offset exists. When the PIP and UIM carrier is the same, however, an offset against the UIM obligation is an acceptable mechanism to account for the PIP reimbursement rights. Mahler, 135 Wash.2d at 436, 957 P.2d 632 ("Provided the insurer recognizes the public policy in Washington of full compensation of insureds and its other duties to insureds by statute, regulation, or common law, the insurer may establish its right to reimbursement and the mechanism for its enforcement by its contract with the insured").[4]
Winters also makes clear that Dayton and Mahler are applied separately to an insurance carrier that provides both UIM and PIP insurance to the same insured. Winters, 144 Wash.2d at 882-83, 31 P.3d 1164. An insurance carrier that provides both UIM and PIP benefits is not required to pay a pro rata share of legal expenses as UIM carrier in order to take a UIM setoff pursuant to Dayton, but is required to pay a pro rata share of legal expenses as PIP carrier in order to take a PIP offset pursuant to Mahler and Winters. Id. The fact that an insurance company providing both PIP and UIM coverage chooses to use an offset from its UIM obligations to account for its PIP reimbursement does not relieve the insurance carrier of its burdens under Mahler and Winters. As the Winters court concluded: "The insured should not be worse off simply because he or she purchased two coverages from the same insurer." Id. at 882, 994 P.2d 881.
B. The Pro Rata Sharing Rule Articulated in Mahler and Winters Applies to Uninsured Tortfeasor Cases
In Mahler, the insured was injured by a fully insured tortfeasor and was fully *399 compensated by the funds recovered from the tortfeasor. In Winters, the insured was injured by an underinsured tortfeasor and the recovery included funds from the tortfeasor and the insured's UIM carrier. In this case, Hamm was injured by an uninsured tortfeasor and recovered only from her UIM carrier. As stated above, the question in this case is whether the equitable principle requiring a PIP carrier to share pro rata in the legal expenses of its insured in order to obtain reimbursement of PIP benefits applies when the insured recovers only from her UIM carrier. We hold that it does and reverse the Court of Appeals.
In its order on remand, the Court of Appeals concludes that "Hamm's UIM carrier received no benefit." Hamm, 115 Wash.App. at 777, 60 P.3d 640 (emphasis added). Focusing on State Farm's capacity as UIM carrier, the Court of Appeals decided that Hamm is not entitled to reimbursement from her UIM carrier for the legal expenses she incurred to create the UIM arbitration award. Id. at 778, 60 P.3d 640. In doing so, the Court of Appeals applied the rule for UIM carrier setoffs from Dayton rather than the rule for PIP carrier offsets from Mahler and Winters.
The Court of Appeals' conclusions with respect to State Farm's obligations in its capacity as UIM carrier may be correct. As in Winters, however, "[t]he question presented here is totally different: whether or not the PIP carrier should pay a pro rata share of legal expenses for its insured in recovering PIP benefits from an UIM insurer." Winters, 144 Wash.2d at 882, 31 P.3d 1164. Although the Court of Appeals notes that "[i]t appears that Hamm is seeking to have State Farm pay a portion of her fees in its capacity as PIP carrier," it erroneously concludes that "Winters is distinguishable because Hamm's PIP carrier received no reimbursement," Hamm, 115 Wash.App. at 778, 60 P.3d 640, and "State Farm as UIM carrier received an offset for the PIP payment previously made." Hamm, 115 Wash. App. at 777 n. 1, 60 P.3d 640.[5]
The offset at issue in this case, just as in Winters, is a benefit to the PIP carrier, not the UIM carrier. The Court of Appeals' decision to the contrary appears to be based on two erroneous mathematical conclusions. First, the Court of Appeals concludes that applying Winters would put State Farm in a worse position than two separate carriers providing PIP and UIM coverage under the same circumstances. Id. at 777, 60 P.3d 640 ("an insurance carrier should not be penalized simply because it provides both UIM coverage and medical payment coverage through PIP ... coverage"). Second, the Court of Appeals mistakenly concludes that "[a]s in Dayton, Hamm would be in a better position for having been injured by an uninsured driver than an insured driver if State Farm were required to pay a share of her fees and costs." Id. at 779, 60 P.3d 640.
As the tables below demonstrate, an insurance carrier providing both UIM and PIP coverage is not penalized when it is required to pay a pro rata share of legal expenses in order to receive its PIP reimbursement.
*400 The following tables compare the position of separate PIP and UIM carriers (table A) with State Farm's position under Winters (table B) and State Farm's position under the Court of Appeals' holding (table C).

 Table A
 Separate PIP and UIM Carriers, Uninsured Tortfeasor
PIP benefits from insurance company A + $ 8,669.71
UIM award from insurance company B + 16,000.00
Legal expenses to arbitrate UIM claim - 6,634.06
Reimbursement to PIP carrier - 8,669.71
PIP pro rata share of legal expenses[6] + 3,582.39
Hamm's total recovery[7] = $12,948.33
 _________
Net combination of PIP and UIM payments[8] $19,582.39
 Table B
 PIP and UIM from State Farm, Unsured Tortfeasor
PIP benefits from State Farm + $ 8,669.71
UIM award from State Farm + 16,000.00
Legal expenses to arbitrate UIM claim - 6,634.06
Reimbursement offset - 8,669.71
PIP pro rata share of legal expenses + 3,582.39
Hamm's total recovery = $12,948.33
 _________
State Farm's net PIP and UIM payments $19,582.39
 Table C
 PIP and UIM from State Farm, Uninsured Tortfeasor,
 No Pro Rata Sharing from PIP (Court of Appeals' holding)
PIP benefits from State Farm + $ 8,669.71
UIM award from State Farm + 16,000.00
Legal expenses to arbitrate UIM claim - 6,634.06
Reimbursement offset - 8,669.71
PIP pro rata share of legal expenses + 0.00
Hamm's total recovery = $ 9,365.94
 _________
State Farm's net PIP and UIM payments $16,000.00

By applying the facts of this case and comparing the combined position of separate PIP and UIM carriers to State Farm's combined position as PIP and UIM carrier, it is clear that State Farm would not be prejudiced by an application of Mahler and Winters. Quite the opposite, by not following Mahler and Winters, the Court of Appeals provides State Farm with a windfall when compared with separate carriers and puts Hamm in a worse position than if she had been covered by separate carriers. The Court of Appeals' outcome directly conflicts with Winters' holding that "[t]he insured should not be worse off simply because he or she purchased two coverages from the same insurer." Winters, 144 Wash.2d at 882, 31 P.3d 1164.
Our decision that the Court of Appeals incorrectly concluded that Hamm would be in a better position than if she had been injured by a fully insured or underinsured driver is demonstrated by comparing *401 Hamm's position in the following five scenarios: (1) separate PIP and UIM carriers with an un insured tortfeasor (table A), (2) State Farm as PIP and UIM carrier with an uninsured tortfeasor (table B), (3) State Farm as PIP and UIM carrier with an uninsured tortfeasor and no pro rata sharing of legal expenses by PIP carrier (table C; Court of Appeals' holding), (4) State Farm as PIP and UIM carrier with a fully insured tortfeasor (table D; Mahler), and (5) State Farm as PIP and UIM carrier with an underinsured tortfeasor (table E; Winters).

 Table D
PIP and UIM from State Farm, Fully Insured Tortfeasor (Mahler)
PIP benefits from State Farm + $ 8,669.71
Recovery from tortfeasor's carrier + 16,000.00
Legal expenses to recover from tortfeasor - 6,634.06
Reimbursement of PIP payments to State Farm - 8,669.71
PIP pro rata share of legal expenses + 3,582.39
 _________
Hamm's total recovery = $12,948.33
 Table E
PIP and UIM from State Farm, Underinsured Tortfeasor (Winters)
PIP benefits from State Farm + $ 8,669.71
Recovery from tortfeasor's carrier + 10,000.00
UIM award from State Farm + $16,000.00
Setoff for tortfeasor recovery (no pro rata share
pursuant to Dayton) - 10,000.00
Legal expenses to recover from tortfeasor and to
arbitrate UIM claim - 6,634.06
Reimbursement offset - 8,669.71
PIP pro rata share of legal expenses + 3,582.39
 _________
Hamm's total recovery = $12,948.33

As tables A through E demonstrate, applying Mahler and Winters would place State Farm in the same position as two separate PIP and UIM carriers, and would place Hamm in the same position she would have been in had two separate carriers provided her insurance. In contrast, failing to apply Mahler and Winters would provide State Farm a windfall, vis-à-vis separate carriers providing the identical coverage, and Hamm would be in a worse position than if she carried insurance from separate carriers.
In addition, application of Mahler and Winters puts Hamm in no better and no worse position than if she had been hit by a fully insured tortfeasor or an underinsured tortfeasor.[9] In contrast, under the Court of Appeals' decision, Hamm would be in a worse position than if she had been hit by a fully insured or underinsured tortfeasor.
Finally, if we apply Mahler and Winters, State Farm would be in the same position in its capacity as PIP carrier as it would be if (a) it provided only PIP insurance to Hamm, (b) Hamm had been hit by a fully insured tortfeasor, or (c) Hamm had been hit by an underinsured tortfeasor. State Farm's varying obligations as a carrier under these different factual scenarios would arise only in its capacity as a UIM carrier.[10]
As in Winters, the issue presented in this case does not depend on State Farm's role as UIM carrier but rather on "whether or not the PIP carrier should pay a pro rata share *402 of legal expenses for its insured in recovering PIP benefits from an UIM insurer." Winters, 144 Wash.2d at 882, 31 P.3d 1164. We hold that State Farm must pay a pro rata share of Hamm's legal expenses in order to take the PIP reimbursement offset, and reaffirm Winters' holding that an insured should not be worse off simply because she purchased two coverages from the same insurer.
C. State Farm's Arguments are Unpersuasive
State Farm claims that Hamm received $8,669.71 in PIP benefits and $7,330.29 in UIM benefits. In fact, it is undisputed that the UIM arbitrator awarded plaintiff $16,000.00 in UIM benefits, not $7,330.29. The only difference between State Farm's position vis-à-vis two separate carriers providing the same types of coverage is that State Farm chose to receive its PIP reimbursement through an offset instead of the UIM carrier tendering a check for $16,000.00 and the PIP carrier receiving a check for $8,669.71. As discussed above, the fact that an insurance carrier providing both PIP and UIM coverage can account for the PIP reimbursement by using an offset does not convert the PIP reimbursement into a limitation on UIM coverage. Thus, in effect, Hamm received $16,000.00 from State Farm in its capacity as UIM carrier and no money from State Farm as PIP carrier because, as PIP carrier, State Farm was reimbursed the entire amount of its prior PIP payments. Just as any PIP carrier under Mahler and Winters, State Farm must pay a pro rata share of its insured's legal expenses in order to receive the PIP reimbursement.
State Farm also suggests that Winters excludes UIM recoveries without a tortfeasor contribution from the definition of a common fund because it states "when a PIP insured creates a common fund from liability payments and UIM benefits, the common fund combines liability proceeds from the tortfeasor's insurance carrier and UIM proceeds from the insured's underinsured motorist carrier." Winters, 144 Wash.2d at 880, 31 P.3d 1164 (emphasis added). This language, however, is merely descriptive of the factual situation present in Winters, and does not function as a restrictive definition of the necessary elements of a common fund. Neither Winters nor Mahler holds that a common fund cannot consist solely of UIM benefits, and we decline to do so now.
Despite suggesting Winters requires the common fund to be a combination of tortfeasor recovery and UIM recovery, State Farm next argues that the money for reimbursement of the PIP carrier must come only from the tortfeasor. See Mahler, 135 Wash.2d at 411, 957 P.2d 632 ("ultimate responsibility for a wrong or loss [should be imposed] on the party who, in equity and good conscience, ought to bear it"). State Farm then argues that Winters recognized the insured's own insurance carrier cannot be the wrongdoer and, therefore, it is the tortfeasor who must ultimately reimburse the PIP carrier for the PIP benefits it paid. See Winters, 144 Wash.2d at 882, 31 P.3d 1164.
Although we agree with State Farm that the insured's own insurance carrier is not an actual wrongdoer, State Farm's argument ignores that "UIM payments are treated as if made by the tortfeasor." Winters, 144 Wash.2d at 880, 31 P.3d 1164; see also Finney v. Farmers Ins. Co., 92 Wash.2d 748, 751, 600 P.2d 1272 (1979) (the purpose of UIM coverage is "to allow an injured party to recover those damages which would have been received had the responsible party maintained [sufficient] liability insurance"). We reiterate that UIM payments are treated as if made by the tortfeasor. PIP carriers may be reimbursed when the insured recovers from the tortfeasor, the tortfeasor and a UIM carrier, or a UIM carrier alone.
As a procedural matter, State Farm would have us hold that Hamm could not create a common fund for the benefit of State Farm as her UIM carrier because State Farm, as such, was the adverse party to the UIM proceedings. This argument fails because the common fund benefited State Farm in its capacity as PIP carrier, not as UIM carrier, and PIP carriers are not adverse parties in UIM proceedings.
State Farm also argues that the common fund doctrine cannot apply because State Farm retained its right to sue the uninsured motorist to recover its PIP payments. State *403 Farm could have pursued the uninsured motorist to recover its PIP payments but State Farm chose not to do so, perhaps realizing that it would have been as futile for it to try to extract money from an uninsured motorist as it would have been for Hamm to try to do so. Instead, State Farm recovered its PIP payments through reimbursement and must pay the required pro rata share of Hamm's legal expenses.
As persuasive authority that Hamm's request for pro rata legal expenses based on the common fund doctrine be denied, State Farm cites to Johnson v. State Farm Mutual Automobile Insurance Co., 323 Ill.App.3d 376, 256 Ill.Dec. 569, 752 N.E.2d 449 (2001). Johnson, however, was based on an interpretation of specific policy language and the authority of arbitrators to consider various portions of the policy language. See id. at 383, 256 Ill.Dec. 569, 752 N.E.2d 449. As Winters clarifies, the rule requiring a pro rata sharing of legal expenses is based on equitable principles and not on construction of specific policy language. Winters, 144 Wash.2d at 878-79, 31 P.3d 1164. Accordingly, we do not find Johnson persuasive.
Finally, State Farm quotes language the legislature omitted from the 1993 PIP statute, RCW 48.22.085, that would have specifically required the type of PIP pro rata sharing of legal expenses later required in Mahler and Winters. Whatever the relevance of the legislature's unknown intent in omitting this language (State Farm does not cite any legislative history explaining why the quoted language was omitted), both Mahler and Winters were decided after the effective date of the PIP statute. Nothing in the omitted language suggests that the PIP pro rata sharing rule from Mahler or Winters should not be applied in this case.

IV. CONCLUSION
After arbitration of Hamm's UIM claim was complete, State Farm took an offset, in an amount equal to the PIP benefits it previously paid, against the amount it owed in its capacity as UIM carrier. An insurance company providing both PIP and UIM coverage to the same insured may receive its PIP reimbursement, after the insured is fully compensated, through the use of an offset against its UIM obligations. An insurance company may not, however, style this offset as a reduction of any amount owed under UIM coverage, rather than a PIP reimbursement, in order to avoid paying a pro rata share of the insured's legal expenses. In order to take the PIP offset, State Farm must pay its pro rata share of the legal expenses Hamm incurred in order to obtain the UIM recovery. The common fund, for purposes of the pro rata sharing rule for legal expenses articulated in Mahler and Winters, may consist of funds from a tortfeasor recovery, a UIM recovery, or a combination of both.
The decision of the Court of Appeals is reversed.
WE CONCUR: IRELAND, BRIDGE, CHAMBERS, OWENS, JJ.
SWEENEY, J.[*] (dissenting).
[A] common fund of this sort does not include the PIP[[1]] payments themselves. By definition, it is limited to money from which the PIP payments may be reimbursed.[[2]]
There may be a reason in equity to require State Farm Mutual Automobile Insurance Co. to pay a portion of Rebecca Hamm's contingent fee here. But the equitable doctrine of the "common fund" is not one of them simply because the parties here never created a "common fund."
It is certainly permissible to treat insurance companies differently from other litigants. Insurance agreements are, after all, generally contracts of adhesion. Mendoza v. Rivera-Chavez, 140 Wash.2d 659, 681, 999 P.2d 29 (2000). So the courts justifiably look at them in a light most favorable to the *404 insured. Panorama Vill. Condo. Owners Ass'n Bd. of Dirs. v. Allstate Ins. Co., 144 Wash.2d 130, 137-38, 26 P.3d 910 (2001). And both the courts and the legislature have articulated public and legal policies that insurance affects the common good,[3] and for that reason is viewed by the courts differently. So if Ms. Hamm had had to sue State Farm to recover her PIP benefits, she might well have been entitled to fees despite the American Rule to the contrary. Olympic S.S. Co. v. Centennial Ins. Co., 117 Wash.2d 37, 52-53, 811 P.2d 673 (1991). But to summon up the common fund doctrine to accommodate payment of this fee does violence to this equitable doctrine. This is not a common fund. And the court should not say that it is.
The question here ultimately is whether Ms. Hamm's lawyer created a fund from which State Farm could recover PIP payments made to herpayments made without contest. And the answer is that he did not. And for this reason I respectfully dissent.

FACTS
Ms. Hamm was covered by a single State Farm policy, Policy No. XXXXXXXXX. That policy included both PIP and uninsured motorist (UIM)[4] coverages. Ms. Hamm was injured in an automobile accident. Neither the other car nor its driver was insured. A panel of arbitrators ultimately concluded that her special and general damages (her total damages) amounted to $16,000. And State Farm paid all of that $16,000-$8,669.71 from the PIP coverage and $7,330.29 from the UIM coverage. No one collected anything from any other insurance company, the State, or any third party. The only money in this pot came from State Farm Policy No. XXXXXXXXXthis single policy with multiple coverages presumably paid periodically in a single billing statement. Ms. Hamm does not contest the policy's standard prohibition against nonduplication of benefits. It provides that "[a]ny amount paid or payable for damages under the first party benefits coverage [PIP] will not be paid again as damages under this coverage [UIM]. This does not reduce the limits of liability of this coverage." Clerk's Papers at 143.

TERMINOLOGY
Terms like "setoff," "offset," "deduction," or whatever term the court wants to ascribe to this transaction should not obscure what is actually going on here. Winters v. State Farm Mut. Auto. Ins. Co., 144 Wash.2d 869, 885, 31 P.3d 1164, 63 P.3d 764 (2001) (Alexander, C.J., dissenting). State Farm is paying the totality of Ms. Hamm's damagesperiod. It paid part under the PIP coverage well before arbitration and apparently without contest. And it paid part under the UIM coverage (following an arbitration for which her attorney charged a fee, a contingent fee). State Farm does not have to pay any portion of her damages twice under the terms of this policy or in equity.

THE AMERICAN RULE
Washington still subscribes to the American Rule for the payment of attorney fees. And so the imposition of attorney fees must be based upon some agreement (contract), a statute, or some recognized ground in equity. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 280, 876 P.2d 896 (1994). There is no contract or statute which would obligate State Farm to pay a portion of Ms. Hamm's lawyer fees. So the only exception under *405 which State Farm would be obligated to pay a portion of her fees must be a recognized ground in equity. The one advanced here is the "common fund," and for the following reasons it is inapplicable.

THE COMMON FUND AS AN EQUITABLE DOCTRINE
The purpose for the court's crafting equitable remedies, any equitable remedy, has not changed over the centuries. It is now and has always been to mitigate the perceived harshness of some legal rule.[5] And while courts have only recently applied the equitable doctrine of the common fund to insurance disputes in Washington, that doctrine has a long and well-developed legacy outside of the insurance context. It is a doctrine grounded in the dictates of a specific public policy fairness.[6]
Like other equitable doctrines, the "common fund" is calculated to achieve equity. Johnny Parker, The Common Fund Doctrine: Coming of Age in the Law of Insurance Subrogation, 31 IND. L.REV. 313, 323 (1998). In that connection, the common fund is grounded in the proposition that "equity does not favor the position of one who sits idly by and allows another, who obviously expects to be paid, to perform valuable services for him, to escape with the value of those services without compensating the same." Id. at 332-33, 876 P.2d 896. So like the genesis of many equitable doctrines, the doctrine of the common fund arises out of the notion that one party (here an insurance company) is being enriched through the efforts of another (the plaintiff's lawyer). And to put it in the vernacular, "that ain't right," or said more eloquently:
"It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the [insurer] as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share."
Mahler v. Szucs, 135 Wash.2d 398, 425 n. 17, 957 P.2d 632, 966 P.2d 305 (1998) (quoting 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4903.85, at 335 (1981)).
There is no magic about the equitable theory of the common fund doctrine in the insurance context. If the plaintiff's lawyer works to build and prosecute a damage case, and prevails, then he or she is entitled to be paid by all who benefit from his or her efforts. But to spell out the rationale is to describe the problem here. By the terms of this policy, Ms. Hamm was never entitled to recover in a UIM arbitration the PIP benefits State Farm already had irrevocably paid her. All she could additionally recover under the terms of the policy (terms which were uncontested) were the damages over and above the PIP paymenther UIM benefits.
*406 The term common fund should not be used to describe something other than an equitable common fund. There is nothing here being "reimbursed" to anyone. State Farm is paying (as it is obligated to do) under two separate coveragesPIP and UIM. It has recovered nothing. It should not have to pay a portion of Ms. Hamm's fees for that privilege.

MAHLER V. SZUCS; WINTERS V. STATE FARM; SAFECO V. WOODLEY

In Mahler v. Szucs, this Supreme Court held for the first time that recovery of medical special damages against a third party which included the medical specials paid under the PIP portion of a policy created an equitable common fund, which was an exception to the American Rule on payments of fees in civil cases. Mahler, 135 Wash.2d 398, 957 P.2d 632. The plaintiff's lawyer there generated a fund State Farm shared in and recovered its PIP payments. Id. at 426-27, 957 P.2d 632.
In Winters v. State Farm, the court further refined the doctrine. Winters, 144 Wash.2d 869, 31 P.3d 1164. The question there was whether adding UIM benefits to the moneys recovered from the third party changed the equitable nature of the fund. It did not: "[i]n each case, the insured secured the proceeds from the at-fault driver or the driver's insurer and then recovered from his or her respective UIM carrier. These pooled funds became a common fund from which the PIP insurer was able to recoup payments it had made." Id. at 881, 31 P.3d 1164 (emphasis added).
And recently in Safeco Insurance Co. v. Woodley, the court again refined the Mahler doctrine by holding that it did not make any difference whether the UIM proceeding preceded or followed a recovery against the third party tortfeasor. Safeco Ins. Co. v. Woodley, 150 Wash.2d 765, 771-72, 82 P.3d 660 (2004). The point was that a common fund had been created with UIM and third party moneys from which the first party carrier, there Safeco, could recover its PIP payments.
So ultimately whether the PIP carrier recovers from a fund which includes only moneys from a third party defendant or a combination of UIM and third party moneys, it makes no difference, a common fund has been created. These holdings are consistent with the purpose originally articulated for the common fund doctrine. See Parker, supra, at 321-23.
But no money has been recovered here which would create a common fund. State Farm has simply paid out all that it was obligated to pay out under two separate provisions of its policy, PIP and UIM. State Farm has not recovered or been "reimbursed" for anything. It simply did not have to pay for the special damages incurred by Ms. Hamm twiceagain a proposition which is not contested here.

ATTORNEY FEES
Much of Ms. Hamm's discussion of fees here is bolstered by various hypothetical scenarios set out in a number of charts, all calculated to show that she pays more to her attorney and gets less, unless State Farm pays for a portion of her fees. Of course she does. But these arguments are all based on the assumption that her lawyer had the right to collect a fee for her PIP benefits in the first place. He did not.
The insurer paid Ms. Hamm's PIP benefits when she presented her medical bills. There was no need to sue, show liability, or demand arbitration. These funds were never at risk. The only service (an important service) for which she needed to pay a lawyer was to recover the remaining and disputed UIM coverage.
Ms. Hamm's PIP payments remained untouchable. Is she then obligated to pay a percentage of PIP sums already received? Moreover, if State Farm elects to assert a subrogation claim against the responsible tortfeasor here for its PIP moneys, it will ultimately wind up paying a lawyer twice for the same thing.
Nor does the fact that Ms. Hamm's lawyer had to introduce evidence of special damages in the UIM arbitration proceeding change the analysis here. The question is whether the lawyer is entitled to a fee based on medical specials, not whether medical specials *407 were a necessary part of Ms. Hamm's case. Of course, medical special damages were an important part of Ms. Hamm's case. Evidence of special damages is necessary to maximize Ms. Hamm's recovery of noneconomic damages. Mahler, 135 Wash.2d at 426, 957 P.2d 632. But introducing medical specials for the purpose of maximizing noneconomic losses does not necessarily mean the plaintiff is entitled to recover them again. It is just thatevidence used to support a claim of noneconomic damages.
The common fund doctrine is grounded in subrogation principles. The doctrine does not, and should not, apply when fees are sought from the assets of the losing party. Savoie v. Merchants Bank, 84 F.3d 52, 56 (2d Cir.1996). These concepts apply here because State Farm was in essence the losing party in the UIM arbitration.

CONCLUSION
Division One of the Court of Appeals got this right. It appropriately distinguished this court's decision in Winters:

Winters is distinguishable from the situation presented by this case because State Farm as PIP carrier did not receive reimbursement, and therefore received no benefit.
Hamm v. State Farm Mut. Auto. Ins. Co., 115 Wash.App. 773, 777, 60 P.3d 640 (2002).
I agree with Mahler (common fund created by contributions solely from a third party recovery). Mahler, 135 Wash.2d at 426-27, 957 P.2d 632. I agree with Winters (recovery from a combination of UIM and third party). Winters, 144 Wash.2d at 878-79, 881, 31 P.3d 1164. And I signed this court's unanimous opinion in Woodley (again, combination of UIM and third party recovery). Woodley, 150 Wash.2d at 771-72, 82 P.3d 660. But I respectfully dissent here. This is not a common fund. And there is no principled way to call it one. State Farm should not have to pay a portion of Ms. Hamm's fees.
Ms. Hamm's insurer fully compensated her through a combination of PIP coverage and UIM coverage. Not only was there no benefit conferred here, but State Farm is also put in the unfair position of possibly having to pay a fee twice for simply paying PIP benefits. And unlike the companies in Mahler, Winters, and Woodley, State Farm did not recover a thing here. And no amount of legal argument can make it otherwise. I would not extend the equitable common fund doctrine to the facts of this case.
ALEXANDER, C.J., concurs.
MADSEN, J. (concurring in the dissent).
I agree with the dissent and write only to express my concern that the majority has abandoned the principle that attorney fees can be awarded on an equitable basis only where a recognized equitable ground exists for such an award. The majority's focus seems to be that State Farm must pay a share of its insured's costs and attorney fees because otherwise the outcome for the insured is not the same as it would be in cases where the insured's total amount received is derived from funds including those recovered from a tortfeasor or the tortfeasor's insurance company, i.e., funds recovered from a source other than the insured's own insurance company. However, there is no "outcome" rule for an equitable award of attorney fees. The question is not whether this insured ends up with the same or less dollars in her pocket than another insured, but whether a recognized equitable ground for an attorney fee award applies.
The dissent is correct that the common fund doctrine does not allow for attorney fees to be awarded here because there was no creation of a common fund by which the insurance company benefited. There are simply no dollars involved in this case other than those paid by Rebecca Hamm's own insurance company, State Farm. State Farm has not been benefited through Hamm's attorney's efforts to secure the insurance proceedsall the funds are paid by State Farm. It therefore does not matter that the insured does not have the same dollars at the end that she would have had if a recovery or settlement from another source had been achieved. The case is not about the amount of her net dollars received, nor about her insurance proceeds. Instead, the question here is whether her costs and attorney *408 fees will be shared by State Farm, and on this question the majority's charts are meaninglessthey do not have anything to do with the common fund rule.
The majority's claim that the insurance company is treated as if it is two entities and as an underinsured (UIM) carrier it is treated as the tortfeasoris not a legitimate explanation of why the common fund doctrine should apply here. That analysis explains why an insurance company may have to provide coverage based upon a tortfeasor's acts, and also why a UIM carrier may set off amounts recovered from a tortfeasor from amounts owed under UIM policy provisions. It cannot in any way change the factual circumstances here: only one insurance company has paid all the funds in this case and it has not benefited by any funds obtained from any other source. The insurance company can hardly be said to have benefited from its own payments.[1]
Nor is it any answer to say that this case simply presents a new scenario for the rule in Mahler, i.e., where the tortfeasor is uninsured. Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632, 966 P.2d 305 (1998). Regardless of whether the tortfeasor is insured, underinsured, or uninsured, the court must be able to justify application of Mahler by showing that a common fund benefiting the insurer has been created through the efforts of the insured's attorney. It has not done so and cannot do so under these circumstances.
The majority opinion takes the common fund rule far beyond its outer limits.
JOHNSON, J., concurs.
NOTES
[1] UIM is an acronym for either uninsured or underinsured motorist coverage.
[2] We use "setoff" and "offset" as they are defined in Winters: "A `setoff' ... refers to sums paid to the insured by another party.... An `offset' refers to a credit to which an insurer is entitled for payments made under one coverage against claims made under another coverage within the same policy." Winters, 144 Wash.2d at 876, 31 P.3d 1164. "Whatever term is used, the insured must be fully compensated before the insurer may recoup benefits paid." Id.
[3] Winters was a consolidated opinion involving two separate cases with two separate insureds (Sarah Winters and Kyle Perkins). For simplicity's sake, only the facts involving Winters are discussed here.
[4] Some discussion of so-called "nonduplication of benefits" clauses was present in both Winters and this case. We clarify that such clauses are valid only to the extent they serve as mechanisms to accomplish the PIP right to reimbursement when the same carrier provides PIP and UIM coverage. An insurance company, however, cannot avoid the pro rata sharing principle by characterizing such clauses as a limitation on UIM coverage rather than a reimbursement offset based on previously paid PIP benefits.
[5] The dissent similarly concludes that "State Farm has not recovered or been `reimbursed' for anything." Dissent at 8. The dissent does not distinguish between State Farm's separate roles as PIP and UIM carrier. Instead, its analysis adopts the dissenting viewpoint in Winters, which is not the law of this state. In Winters, the dissent argued:

The majority contends that the PIP offset served to reimburse State Farm for the PIP payments it had paid. Although State Farm was able to offset the PIP payments it previously paid to Perkins and Winters against its UIM obligation, thus reducing the amount of UIM benefits it had to pay, this cannot be considered a reimbursement. I say that because State Farm has never recovered the PIP benefits it previously paid to Perkins and Winters. Thus, it has not been restored to its pre-accident position. An offset is not a reimbursement nor a recoupment. It simply prevents an insured from receiving a double recovery. In sum, the insurer's offset of the PIP payment against its UIM obligation is not a reimbursement or recoupment of the PIP payment.
Winters, 144 Wash.2d at 885, 31 P.3d 1164 (Alexander, C.J.dissenting).
The dissent's characterization of the charts in our majority opinion and the dissent's double payment theory do not recognize reimbursement to the PIP carrier and would overrule Winters. The dissent ignores that Winters already rejected the notion that a PIP carrier does not receive reimbursement from UIM payments when the PIP carrier and the UIM carrier are the same company. Id. at 881-82.
[6] The formula for calculating a PIP carrier's pro rata share of the insured's legal expenses is "legal expenses multiplied by the ratio obtained by dividing the PIP reimbursement by total damages." Safeco Ins. Co. v. Woodley, 150 Wash.2d 765, 772-73, 82 P.3d 660 (2004).
[7] Hamm's $12,948.33 total recovery represents $8,669.71 in PIP payments, minus $8,669.71 in PIP reimbursement, plus $16,000.00 in UIM benefits, minus $3,051.67 in net legal expenses ($6,634.06 legal expenses reduced by the $3,582.39 contribution from the PIP carrier).
[8] The $19,582.39 net PIP and UIM payment total represents $8,669.71 in PIP payments, minus $8,669.71 in PIP reimbursement, plus $16,000.00 in UIM benefits, plus the PIP $3,582.39 pro rata share of legal expenses.
[9] These hypotheticals assume, as they must, no change in the underlying amount of legal expenses. Although the amount of legal expenses incurred may vary depending on whether the tortfeasor is uninsured, underinsured, or fully insured, the amount of legal expenses is not an issue in this case, nor was it an issue in Mahler or Winters. All three cases, Mahler, Winters, and this case, are about whether the PIP insured must pay a pro rata share of legal expenses incurred, and not about the underlying amount of legal expenses (which may vary as much from insured to insured as from uninsured tortfeasor to underinsured or fully insured tortfeasor).
[10] The position of a UIM carrier always changes depending on whether the tortfeasor is fully insured, underinsured, or uninsured.
[*] Judge Dennis J. Sweeney is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a).
[1] Personal injury protection (PIP).
[2] Winters v. State Farm Mut. Auto. Ins. Co., 99 Wash.App. 602, 612 n. 32, 994 P.2d 881 (2000) (emphasis added), aff'd, 144 Wash.2d 869, 31 P.3d 1164, 63 P.3d 764 (2001).
[3] RCW 48.01.030; e.g., Fluke Corp. v. Hartford Accident & Indem. Co., 145 Wash.2d 137, 144 n. 4, 34 P.3d 809 (2001); State Farm Gen. Ins. Co. v. Emerson, 102 Wash.2d 477, 481-82, 687 P.2d 1139 (1984); Thiringer v. Am. Motors Ins. Co., 91 Wash.2d 215, 219-20, 588 P.2d 191 (1978).
[4] PIP coverage and underinsured motorist coverage protect against two different risks. The PIP coverage guaranteed payment of certain special damages following an automobile accident, regardless of whether the insured or the other driver was at fault. The underinsured motorist coverage, on the other hand, guaranteed payment of both special and general damages, but only if the other driver was at fault. The two coverages overlap at one pointpayment of certain special damages when the other driver was at fault. Only at this point does the PIP reimbursement clause operate to deny the plaintiff recovery under both coverages.

Keenan v. Indus. Indem. Ins. Co. of N.W., 108 Wash.2d 314, 322, 738 P.2d 270 (1987), overruled on other grounds by Price v. Farmers Ins. Co. of Wash., 133 Wash.2d 490, 946 P.2d 388 (1997).
[5] Kingery v. Dep't of Labor & Indus., 132 Wash.2d 162, 173, 937 P.2d 565 (1997) ("`[E]quitable doctrines grew naturally out of the humane desire to relieve under special circumstances from the harshness of strict legal rules.'" (quoting Ames v. Dep't of Labor & Indus., 176 Wash. 509, 513, 30 P.2d 239 (1934))); Leschner v. Dep't of Labor & Indus., 27 Wash.2d 911, 925, 185 P.2d 113 (1947) ("The decision was rested on broad equitable principles, upon the theory that the legislature has always been well advised of the uses and purposes of equity to afford relief, under special circumstances, from the harshness of strict legal rules...."); Lundberg ex rel. Orient Found. v. Coleman, 115 Wash.App. 172, 180, 60 P.3d 595 (2002) ("The purpose of equity is to permit a trial court to fashion remedies when the law does not provide adequate remedies."), review denied, 150 Wash.2d 1010, 79 P.3d 446 (2003).
[6] Miotke v. City of Spokane, 101 Wash.2d 307, 339, 678 P.2d 803 (1984) ("`By eliminating the need for a specific monetary fund, we did not eliminate the need for accumulating, preserving, or creating a common fund.'" (emphasis omitted) (quoting Seattle Sch. Dist. No. 1 v. State, 90 Wash.2d 476, 543, 585 P.2d 71 (1978))); Weiss v. Bruno, 83 Wash.2d 911, 912, 523 P.2d 915 (1974) ("However, it has long been the rule that equity may allow reimbursement of attorneys' fees from a fund created or preserved by a litigant for the benefit of others as well as himself. This `common fund' doctrine has its roots in English law."); Grein v. Cavano, 61 Wash.2d 498, 506, 379 P.2d 209 (1963) ("The party whose participation in the litigation brings benefit to the common fund is entitled to an award of reasonable attorneys' fees regardless of his success in litigation.").
[1] As the dissent notes, this case is unlike Winters v. State Farm Mutual Automobile Insurance Co., 144 Wash.2d 869, 31 P.3d 1164, 63 P.3d 764 (2001). There, the insureds secured proceeds from the at-fault driver or the driver's insurance company and then recovered from their UIM carriers. "These pooled funds became the common fund from which the PIP [personal injury protection] insurer was able to recoup payments it had made." Id. at 881, 31 P.3d 1164. Thus, in Winters the insurers benefited from funds secured by the insureds from other sources.