[No. 39323-9-II.   Division Two.   July 29, 2010.]

KAREN WEISMANN, *Respondent*, v. SAFECO INSURANCE COMPANY OF ILLINOIS, *Appellant*.

---

[*] Judge Houghton is serving as judge pro tempore of the Court of Appeals, Division Two, under RCW 2.06.150.

170

*M. Colleen Barrett, Gregory S. Worden*, and *Kevin J. Kay* (of *Barrett & Worden PS*), for appellant.

*Craig F. Schauermann* and *Scott A. Staples*, for respondent.

¶1 Quinn-Brintnall, J. — Tortfeasor's insurance company, Safeco Insurance Company of Illinois, appeals a trial court order granting summary judgment in favor of the injured party, Karen Weismann. In its summary judgment order, the trial court found that Safeco was required to reduce its personal injury protection (PIP) payment offset by a pro rata share of Weismann's attorney fees and costs and that Weismann was entitled to additional attorney fees under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Safeco asserts that the trial court erred in granting summary judgment in favor of

Weismann because this court's decision in *Young v. Teti*, 104 Wn. App. 721, 16 P.3d 1275 (2001), held that no common fund is created where an injured person recovers both PIP benefits and a liability award from the tortfeasor's insurance company. Weismann asserts that the trial court properly granted summary judgment in her favor because our Supreme Court's decision in *Hamm v. State Farm Mutual Automobile Insurance Co.*, 151 Wn.2d 303, 308, 88 P.3d 395 (2004), impliedly overruled *Young*. We hold that *Hamm* is distinguishable from *Young* and that *Young* controls the outcome of this appeal. Accordingly, we reverse the trial court's summary judgment order and remand for entry of summary judgment in favor of Safeco.

## FACTS

¶2 On July 22, 2005, in Clark County, Washington, Darlene Kangas struck Weismann with her car while Weismann was operating her motorized mobility device. Pursuant to Kangas's PIP policy,[1] Safeco paid Weismann $9,012.95 for injuries she sustained in the collision. Weismann is an "insured" by definition under Safeco's PIP policy because she was a pedestrian struck by Kangas's covered auto. But under Safeco's liability policy, Weismann is a claimant and is not an insured.

¶3 On May 16, 2008, during ongoing settlement negotiations between Weismann and Safeco, Safeco's adjuster advised Weismann's counsel that Safeco would offset[2] Weismann's settlement against Kangas by $9,012.95, the entire amount Safeco had paid her in PIP benefits, without reducing the offset by a proportionate share of her attorney fees and costs. Weismann asserted that Washington law

---

[1] PIP coverage generally provides benefits for the immediate costs of an automobile accident, including medical expenses and loss of income. *Hamm*, 151 Wn.2d at 308.

[2] "An 'offset' refers to a credit to which an insurer is entitled for payments made under one coverage against claims made under another coverage within the same policy." *Winters v. State Farm Mut. Auto. Ins. Co.*, 144 Wn.2d 869, 876, 31 P.3d 1164, 63 P.3d 764 (2001).

required Safeco to reduce its offset by a proportionate share of her attorney fees and costs. Safeco responded that Washington law does not require such a reduction, citing this court's decision in *Young*, 104 Wn. App. 721.

¶4 On May 21, 2008, the parties agreed that Weismann's damages were $44,521.19. Safeco told Weismann that it would offset the entire PIP amount it had paid Weismann, $9,012.95, without reducing its offset by a proportionate share of her attorney fees and costs, and pay her the difference, $35,508.24. On May 30, 2008, Weismann sent notice to Safeco and the Office of the Insurance Commissioner, alleging that Safeco's refusal to pay a proportionate share of her attorney fees and costs violated the insurance fair conduct act, ch. 48.30 RCW.

¶5 On June 11, 2008, Weismann and Safeco entered an agreement reserving Weismann's right to bring an action against Safeco to determine whether it was required to reduce its offset for PIP payments by a proportionate share of attorney fees and costs. On July 10, 2008, Weismann filed her complaint against Safeco in the Clark County Superior Court.

¶6 On December 16, 2008, Weismann moved for summary judgment, asserting that, under *Hamm*, Safeco was required to reduce its PIP offset by a proportionate share of attorney fees and costs as a matter of law. Safeco filed a cross motion for summary judgment, asserting that *Young* was still controlling law and our Supreme Court's decision in *Hamm* did not overrule it.

¶7 The trial court ruled in Weismann's favor, finding that *Young* was no longer controlling under our Supreme Court's decisions in *Hamm* and *Winters v. State Farm Mutual Automobile Insurance Co.* 144 Wn.2d 869, 31 P.3d 1164, 63 P.3d 764 (2001). Weismann moved for attorney fees under *Olympic Steamship*, 117 Wn.2d 37. The trial court's summary judgment order required Safeco to reduce its PIP offset by one-third for attorney fees and costs, and it awarded Weismann an additional $6,360 for attorney fees

and costs under *Olympic Steamship*. Safeco timely appeals the trial court's summary judgment order.

## ANALYSIS

¶8 Safeco contends that the trial court erred in requiring it to reduce its PIP offset by a pro rata share of Weismann's attorney fees and costs because, under this court's decision in *Young*, no common fund is created where an insured recovers both PIP benefits and a liability award from the tortfeasor's insurance company. Weismann responds that such a reduction is necessary under our Supreme Court's decision in *Hamm*, 151 Wn.2d 303, asserting that *Hamm* had impliedly overruled *Young*. Because the facts in *Young* are distinguishable from *Hamm*, and our Supreme Court did not impliedly overrule *Young*, *Young* controls. Accordingly, we hold that the trial court erred in granting Weismann's motion for summary judgment and reverse and remand for entry of summary judgment in favor of Safeco.[3]

¶9 We review a grant of summary judgment de novo, engaging in the same inquiry as the trial court. *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 206, 11 P.3d 762, 27 P.3d 608 (2000). Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Amalgamated Transit*, 142 Wn.2d at 206.

¶10 Under the American rule on fees in civil cases, which Washington follows, civil litigants are responsible for paying their own attorney fees and costs absent specific statutory authority, contractual provision, or recognized grounds in equity. *Wagner v. Foote*, 128 Wn.2d 408, 416, 908 P.2d 884 (1996). The common fund doctrine is an exception to the American rule on civil fees and applies in cases

---

[3] Shortly before hearing oral arguments in this appeal, Division One of this court issued its opinion in *Matsyuk v. State Farm Fire & Casualty Co.*, 155 Wn. App. 324, 229 P.3d 893 (2010). *Matsyuk* is in accord with our decision here and similarly held that *Young* remains controlling authority after *Hamm* such that no common fund is created when an injured party recovers both PIP benefits and a liability award from the tortfeasor's insurance company.

"where litigants preserve or create a common fund for the benefit of others as well as themselves." *Mahler v. Szucs*, 135 Wn.2d 398, 427, 957 P.2d 632, 966 P.2d 305 (1998).

¶11 In *Mahler*, an insurance company sought reimbursement for PIP payments it had made to the injured after the injured recovered an award against the tortfeasor. 135 Wn.2d at 404-05. Our Supreme Court first determined that the insurance company had a right to recoup its PIP payment against the injured's recovery under general principles of subrogation:

> Subrogation is an equitable doctrine the essential purpose of which is to provide for a proper allocation of payment responsibility. It seeks to impose ultimate responsibility for a wrong or loss on the party who, in equity and good conscience, ought to bear it.

*Mahler*, 135 Wn.2d at 411.

> In the insurance context, the "doctrine of subrogation enables an insurer that has paid an insured's loss pursuant to a policy . . . to recoup the payment from the party responsible for the loss."

*Mahler*, 135 Wn.2d at 413 (alteration in original) (quoting Elaine M. Rinaldi, *Apportionment of Recovery Between Insured and Insurer in a Subrogation Case*, 29 TORT & INS. L.J. 803, 803 (1994)).

¶12 But our Supreme Court also held that before the insurance company could recoup its PIP payments, it had to reduce any recoupment amount by a proportionate share of the injured's litigation costs in collecting her award against the tortfeasor. *Mahler*, 135 Wn.2d at 405. The *Mahler* court thus applied the common fund doctrine where an insured's litigation had generated a fund of money paid by the tortfeasors that would compensate both the insured for her damages and the insurer for its previous PIP payments.[4]

---

[4] Although the *Mahler* court held that the insurance company had to reduce its reimbursement of PIP payments by a proportionate share of the injured's attorney fees and costs based on language in the injured's insurance policy, later cases

Thus, where both an insured and insurer benefit from the insured's litigation, each is obligated to pay a proportionate share of the attorney fees and costs incurred to generate the common fund.

¶13 In *Young*, the injured plaintiff received PIP payments from the tortfeasor's insurance company as a third party beneficiary to the policy and later recovered damages against the tortfeasor, which the tortfeasor's insurance company paid. 104 Wn. App. at 723. This court held that the *Mahler* fee-sharing rule did not apply in this context, reasoning that

> Young, the injured plaintiff, initially received PIP payments, *not from her own insurer*, as in *Mahler*, but rather from the tortfeasor's insurer. Thus, when Young sued the tortfeasor, Teti, and recovered, *she did not create a fund* to benefit, or to reimburse, anyone other than herself. Young's jury verdict *increased* Teti's, and his insurer's, financial obligation to Young.

*Young*, 104 Wn. App. at 725 (footnote omitted).

¶14 Because Young's litigation did not create a common fund benefitting the insurer, this court held that the tortfeasor's insurance company could offset its liability award by its earlier PIP payment to Young without deducting a pro rata share of Young's attorney fees and costs. Weismann does not appear to contend that the facts in *Young* are distinguishable from the facts presented in this appeal,[5] but she asserts that *Young* is no longer good precedent following our Supreme Court's decisions in *Winters* and *Hamm*. We disagree.

¶15 In *Winters*, the injured received PIP payments from her own insurance company and later sought recovery for

---

make clear that the *Mahler* fee-sharing rule is based in equity and, thus, does not depend on specific language in an insurance policy. *See Hamm*, 151 Wn.2d at 310-11 ("*Winters* clarified that the pro rata sharing rule articulated in *Mahler* is based on equitable principles, not specific policy language." (citing *Winters*, 144 Wn.2d at 878-79)).

[5] Although, unlike in *Young*, Safeco's PIP policy defines Weismann as an "insured" rather than as a third party beneficiary, this is not a meaningful distinction because Weismann, like Young, was not a party to the tortfeasor's insurance contract and received benefits from the PIP policy because the tortfeasor had contracted with her insurance company for PIP coverage.

her injuries against the tortfeasor. 144 Wn.2d at 873. Because the tortfeasor's liability coverage did not fully compensate her for her injuries, Winters also filed a claim under her insurance company's underinsured motorist (UIM)[6] policy. *Winters*, 144 Wn.2d at 873. Our Supreme Court held that Winters's insurance company was entitled to offset its UIM award by its earlier PIP payment but that it had to reduce its offset by a proportionate share of Winters's litigation costs. *Winters*, 144 Wn.2d at 883. The *Winters* court reasoned that this reduction was necessary because Winters's litigation against the tortfeasor and her own insurance company in its UIM capacity created a common fund that benefitted both her and her insurance company in its PIP capacity. 144 Wn.2d at 883.

¶16 In reaching its decision, our Supreme Court first noted that UIM payments are treated as if made by the tortfeasor. *Winters*, 144 Wn.2d at 880 (citing *Jain v. State Farm Mut. Auto. Ins. Co.*, 130 Wn.2d 688, 695, 926 P.2d 923 (1996)). Our Supreme Court stated,

> In cases where the tortfeasor has adequate insurance, the common fund created by a PIP insured consists entirely of proceeds recovered from the tortfeasor's liability carrier, who stands in the shoes of the tortfeasor. Thus, the payments are treated as if the tortfeasor made them.
>
> On the other hand, when a PIP insured creates a common fund from liability payments and UIM benefits, the common fund combines liability proceeds from the tortfeasor's insurance carrier and UIM proceeds from the insured's underinsured motorist carrier. . . .
>
> . . . .
>
> . . . These pooled funds became the common fund from which the PIP insurer was able to recoup payments it had made.

*Winters*, 144 Wn.2d at 880-81.

¶17 In *Hamm*, our Supreme Court extended the equitable fee-sharing rule articulated in *Winters* to a case where

---

[6] UIM is used as an initialism for both underinsured and uninsured motorist coverage.

the injured recovered both PIP benefits and UIM benefits from her insurance company. *Hamm*, 151 Wn.2d at 306. In determining that a common fund was created where the injured recovered both PIP and UIM benefits from her own insurance company, our Supreme Court noted, as it did in *Winters*, that "[f]or purposes of UIM coverage, the insurance carrier is said to stand in the shoes of the tortfeasor, and payments made by the UIM carrier are treated as if they were made by the tortfeasor." *Hamm*, 151 Wn.2d at 308 (citing *Britton v. Safeco Ins. Co. of Am.*, 104 Wn.2d 518, 529, 707 P.2d 125 (1985); *Winters*, 144 Wn.2d at 880).

¶18 Our Supreme Court further noted that had Hamm purchased PIP and UIM coverage from separate insurance companies, the PIP carrier would clearly benefit from Hamm's UIM award and, thus, the PIP carrier would have to share in Hamm's litigation costs against the UIM carrier in order to recoup its PIP payment. In applying the common fund doctrine where the injured purchased both PIP and UIM coverage from the same insurer, our Supreme Court reasoned that " '[t]he insured should not be worse off simply because he or she purchased two coverages from the same insurer.' " *Hamm*, 151 Wn.2d at 315 (alteration in original) (quoting *Winters*, 144 Wn.2d at 882).

¶19 In asserting that *Hamm* and *Winters* had impliedly overruled *Young*, Weismann fails to recognize that in both *Hamm* and *Winters*, the *injured's* insurance company paid both PIP and UIM benefits, whereas in *Young* and in the present case, the *tortfeasor's* insurance company paid PIP benefits and a liability award. This is a meaningful distinction because, unlike the injured's PIP carriers in *Hamm*, *Winters*, and *Mahler*, the tortfeasor's PIP carriers in *Young* and in the present case do not have a third party against whom they can assert a subrogation right. *See Mahler*, 135 Wn.2d at 419 (" 'No right of subrogation can arise in favor of an insurer against its own insured since, by definition, subrogation exists only with respect to rights of the insurer against third persons to whom the insurer owes no duty.' "

(quoting *Stetina v. State Farm Mut. Auto. Ins. Co.*, 196 Neb. 441, 243 N.W.2d 341, 346 (1976))).[7]

¶20 Where an injured collects PIP benefits from the tortfeasor's insurer and later sues the tortfeasor, the PIP carrier stands in no better position because of the injured's litigation efforts and no common fund is created. Thus, instead of operating as a reimbursement from the tortfeasor, for which the insured's PIP carrier must share in litigation expenses, the offset taken here and in *Young* function to prevent the injured from receiving a double recovery. *See Young*, 104 Wn. App. at 726 ("Rather than reimbursing Allstate, the . . . offset simply relieved Allstate and Teti from having to pay Young *again* for the same . . . medical expenses and lost wages that it had already paid Young under Teti's PIP coverage."); *see also Lange v. Raef*, 34 Wn. App. 701, 704, 664 P.2d 1274 (1983) ("Where the source of the collateral payments is the tortfeasor or a fund created by him to make such payments, . . . such payments may be proven at trial to prevent double recovery.").

■ ¶21 Because our Supreme Court has not overruled *Young*, and because *Young* controls here, the trial court erred in granting Weismann's summary judgment motion. Additionally, because Weismann had received the full benefit of Safeco's insurance policy, the trial court erred in finding she was entitled to attorney fees under *Olympic Steamship*. 117 Wn.2d at 54 ("An insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees."). Because the record conclusively establishes that Safeco was not required to reduce its PIP offset by a pro rata share of Weismann's attorney fees and costs, we reverse the trial court's summary judgment order in favor of Weismann and remand for entry of summary judgment in favor of Safeco.

---

[7] Stated differently, when an injured must litigate to recover benefits from her own insurance company to whom she had been paying premiums, the equitable fee-sharing rule is triggered. But when an injured litigates to recover benefits from the tortfeasor's insurance company, to whom she has not been paying premiums, the equitable fee-sharing rule of *Hamm* and *Winters* does not apply.

ATTORNEY FEES

¶22 Weismann requests attorney fees under RAP 18.1 and *Olympic Steamship*. For the reasons we stated above, we deny Weismann's request for attorney fees on appeal.

¶23 Reversed and remanded.

BRIDGEWATER and ARMSTRONG, JJ., concur.

Review granted at 170 Wn.2d 1010 (2010).