[No. 24911-1-II.   Division Two.   February 9, 2001.]

PATRICIA A. YOUNG, *Respondent*, v. H. VICTOR TETI, *Appellant*.

*Novelle F. Ballard*; *William H. Meyn* (of *McLean Kovak, P.S.*); and *Pamela A. Okano* and *William R. Hickman* (of *Reed McClure*), for appellant.

*Robert A. Weppner III*; and *J. Michael Koch* (of *J. Michael Koch & Associates*), for respondent.

HUNT, A.C.J. — H. Victor Teti injured Patricia Young in an automobile accident; Teti was at fault. Teti's insurance carrier paid $9,386 to Young. Young sued Teti for damages. The jury returned a verdict for Young, against which the trial court offset the $9,386 that Teti's insurance carrier

had already paid Young. Citing *Mahler*,[1] the trial court reduced this offset by Young's attorney fees and costs. Teti appeals this offset reduction, arguing that neither *Mahler* nor any other authority requires him to share Young's costs in obtaining a verdict against him. Agreeing with Teti that *Mahler* does not apply,[2] we reverse and remand.

## FACTS

Teti drove his car into the path of another vehicle and crashed, injuring his passenger, Young. Teti's insurer, Allstate Indemnity Company, paid Young $9,386 for her medical expenses and lost wages under Teti's Personal Injury Protection (PIP) coverage.[3] Young also sued Teti for negligence,[4] alleging that she had endured pain and suffering, had lost wages, and had incurred "continuing" medical expenses. A jury awarded Young a verdict for $20,000: $13,000 for past economic damages, $2,500 for future economic damages, and $4,500 for noneconomic damages.

Teti moved to offset the jury award by Allstate's earlier $9,386 PIP payment to Young; Young agreed. Thus, at this juncture, Teti owed Young $10,614.

But Young argued that she was entitled to deduct from the offset her attorney fees and costs under *Mahler v. Szucs*, 135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998). The trial court agreed, reasoning that:

---

[1] In *Mahler v. Szucs*, 135 Wn.2d 398, 404-05, 957 P.2d 632, 966 P.2d 305 (1998), the Washington Supreme Court held that an insurer was required to pay a pro rata share of its insured's (Mahler) attorney fees and costs of recovering damages from an automobile accident tortfeasor (Szucs), where a portion of Mahler's recovery reimbursed the insurer for its earlier PIP (Personal Injury Protection) payments to Mahler.

[2] Young's verdict operated to Teti's and his insurer's *detriment*, unlike the facts in *Mahler*, where the injured plaintiff's lawsuit and settlement against the tortfeasor operated to the plaintiff's insurer's *benefit* (Mahler's insurer was reimbursed from her settlement against tortfeasor Szucs).

[3] The PIP coverage was for an "injured person['s]" wage loss and "reasonable and necessary expenses incurred within one year from the date of the accident."

[4] Allstate was not a party to this lawsuit.

there is special funding under the PIP coverage in an insurance policy and there's funding under the liability coverage in an insurance policy. And they're not the same. They're two different categories under the insurance policy. . . . And if [Young] had not brought the case, Allstate would not get any setoff against any judgment. If there was no judgment, there would be no need for setoff. But he brought the action, he got the judgment, and you [Teti] are entitled to a setoff, I agree, but your setoff is going to be reduced . . . .

Report of Proceedings (June 25, 1999) at 12. The trial court then reduced Teti's offset to $2,600.[5] Thus, subtracting the offset ordered by the trial court, Teti then owed Young $17,400.[6]

## ANALYSIS

### I. *Mahler v. Szucs*

The insurers in *Mahler* paid their fault-free, injured insureds under their insurance policies' PIP coverage. These policies gave the insurers reimbursement rights for PIP payments if the injured insureds recovered from the tortfeasor(s). *Mahler*, 135 Wn.2d at 418, 421. The policies further provided for sharing recovery costs: "If the insured recovers from the party at fault and we [the insurer] share in the recovery, we will pay our share of the legal expenses." *Mahler*, 135 Wn.2d at 419.

The injured insureds in *Mahler* recovered from the tortfeasors and reimbursed their insurance carriers for their earlier PIP payments. But, contrary to the policy provisions, the carriers refused to share their insureds' legal expenses incurred in recovering damages from the tortfeasors. 135 Wn.2d at 407, 409.

The Supreme Court found the insurers' promise to share in their insureds' recovery expenses consistent with "the common fund doctrine, which, as an exception to the

---

[5] $9,386 previously paid to Young minus (1) Young's attorney fees of $3,285 *and* (2) Young's costs of $3,501 equals $2,600.

[6] $20,000 judgment minus $2,600 court-ordered offset equals $17,400.

American Rule on fees in civil cases,[7] applies to cases where litigants preserve or create a common fund for the benefit of others as well as themselves." *Mahler*, 135 Wn.2d at 426-27. The Court reasoned that: (1) the insureds' litigation had generated a fund of money paid by the tortfeasors (i.e., settlement proceeds); (2) this fund would compensate both the insureds for their damages and their insurers for their previous PIP payments; and (3) because both insured and insurer benefited, each was obligated to pay a pro rata share of fees and costs incurred to generate the funds. *Mahler*, 135 Wn.2d at 426-27.

█ But such is not the case here. Young, the injured plaintiff, initially received PIP payments, *not from her own insurer*, as in *Mahler*, but rather from the tortfeasor's insurer. Thus, when Young sued the tortfeasor, Teti, and recovered, *she did not create a fund* to benefit, or to reimburse, anyone other than herself.[8] Young's jury verdict *increased* Teti's, and his insurer's, financial obligation to Young $10,614 more than the $9,386 that Allstate had already paid her as a third-party beneficiary under Teti's insurance policy PIP coverage.[9]

## II. *MAHLER*: INAPPLICABLE FOR FEE APPORTIONMENT WHERE LAWSUIT DOES NOT BENEFIT INSURED OR INSURER

Because Young's litigation did not benefit Allstate, *Mahler* does not apply and Allstate need not share in Young's litigation costs. When the jury awarded plaintiff Young past economic damages against defendant Teti, Young agreed that Teti was entitled to an offset for Allstate's earlier PIP payment to Young under Teti's insur-

---

[7] Under the American Rule followed in Washington, a court has no power to award attorney fees in the absence of a contract, statute, or recognized ground of equity providing for fee recovery. *Dayton v. Farmers Ins. Group*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994).

[8] We do not know whether, as in *Mahler*, Young also recovered from her own insurer; if she did, that fact and its related issues are not before us.

[9] *Compare Mahler*, where the plaintiff's litigation produced funds to reimburse the plaintiff's insurer.

ance policy.[10] Unlike in *Mahler*, Young's lawsuit produced no additional party to reimburse Allstate.

In contrast, Young's lawsuit *increased* the amount that Allstate had to pay to cover the additional damages awarded against its insured, Teti, under his bodily injury liability coverage with Allstate. Rather than reimbursing Allstate, the proposed $9,386 offset simply relieved Allstate and Teti from having to pay Young *again* for the same $9,386 medical expenses and lost wages that it had already paid Young under Teti's PIP coverage. *See Winters v. State Farm Mut. Auto. Ins. Co.*, 99 Wn. App. 602, 615, 994 P.2d 881, *review granted*, 141 Wn.2d 1018 (2000);[11] *Safeco Ins. Co. v. Woodley*, 102 Wn. App. 384, 392-93, 8 P.3d 304 (2000).

But, contrary to the trial court's ruling, and unlike *Mahler*, here there is no contractual or legal basis for requiring Teti to share Young's litigation expenses in suing him and recovering damages. First, Young, the injured-plaintiff, was not Allstate's insured. Rather, Teti, the tortfeasor-defendant, was Allstate's insured, and Young

---

[10] Teti's Allstate insurance policy provided: (1) bodily injury liability (BIL) coverage, for "damages an insured person is legally obligated to pay because of ... **bodily injury** sustained by any person"; (2) personal injury protection (PIP) coverage, for an "injured person['s]" wage loss and "reasonable and necessary expenses incurred within one year from the date of the accident"; (3) reduction of the BIL coverage "by all amounts paid or payable under the [PIP] Coverage"; and (4) a "Reimbursement Agreement:"

When **we** pay any person under [PIP] coverage:

1. and an injured person receives a judgment ... from a party legally responsible for the **bodily injury**, the **injured person** must repay **us**. . . .

Repayment shall be only to the extent the damages recovered include any expense, amount or payment for which benefits were paid.

2. all rights of recovery against any legally responsible party or insurer must be maintained and preserved for **our** benefit.

3. where the *injured person* or **Allstate** or both have *incurred expenses in recovering payments which benefit both*, the expenses will be shared by both parties.

Clerk's Papers at 54-55 (emphasis added).

[11] *Winters*, like *Mahler*, involved a debate between a fault-free, injured insured, over apportionment of attorney fees and costs to recover damages from the at-fault tortfeasor, and a carrier standing in the shoes of the at-fault tortfeasor.

was a third-party beneficiary under Teti's PIP coverage when his tortious conduct caused her harm. Second, under Teti's policy, Allstate was obligated to share an injured person's expenses in recovering PIP payments *only if Allstate also benefited*.[12] But here, *Allstate did not benefit* from Young's lawsuit against Teti; rather, the lawsuit worked to Allstate's detriment when its insured, Teti, became liable to pay more money to Young.[13]

Unlike *Mahler*, Young's litigation against Allstate's insured produced no additional party from whom Allstate could recoup any money. Thus, *Mahler* awards are inappropriate here, where an injured, faultless third person recovers only from the insured tortfeasor, rather than also from the injured party's own insurer.[14] We hold that *Mahler* does not apply here[15] and that Teti's offset should not have been reduced by Young's attorney fees and costs.

Reversed and remanded for entry of judgment with no reduction of Teti's offset against Young's verdict.

HOUGHTON and BRIDGEWATER, JJ., concur.

---

[12] The policy provided in pertinent part: "3. where the **injured person** or **Allstate** or both have incurred expenses in recovering payments which *benefit both*, the expenses will be shared by both parties." (Emphasis added.)

[13] Teti was not injured nor did he incur expenses to *recover* payments from anyone.

[14] Teti unnecessarily attempts to distance himself from our recent *Winters v. State Farm* holding that a common fund for the payment of *Mahler* expenses could be created from a third party tortfeasor's liability proceeds and the faultless insured's UIM (underinsured/uninsured motorist) award. 99 Wn. App. at 615. But we specifically stated in *Winters*: "Nothing in this opinion considers or addresses the at-fault PIP insured," the position occupied here by Teti. 99 Wn. App. at 611 n.31.

[15] Similarly inapplicable is Young's equitable estoppel argument.