[Nos. 84686-3; 85012-7.   En Banc.]
Argued May 26, 2011.    Decided February 9, 2012.

OLGA MATSYUK, *Individually and on Behalf of All Those Similarly Situated, Petitioner*, v. STATE FARM FIRE & CASUALTY COMPANY, *Respondent.*

KAREN WEISMANN, *Petitioner*, v. SAFECO INSURANCE COMPANY OF ILLINOIS, *Respondent.*

*Matthew J. Ide* (of *Ide Law Office*) and *David R. Hallowell*, for petitioner Olga Matsyuk.

*Craig F. Schauermann* and *Scott A. Staples*, for petitioner Karen Weismann.

*Kenneth E. Payson, Stephen M. Rummage, Hozaifa Y. Cassubhai,* and *Roger A. Leishman* (of *Davis Wright Tremaine LLP*), for respondent State Farm Fire & Casulty Company.

*M. Colleen Barrett, Gregory S. Worden,* and *Kevin J. Kay* (of *Barrett & Worden PS*), for respondent Safeco Insurance Company of Illinois.

*Bryan P. Harnetiaux, Gary N. Bloom,* and *George M. Ahrend* on behalf of Washington Association for Justice Foundation, amicus curiae.

¶1 STEPHENS, J. — These consolidated cases invite us to clarify the pro rata fee sharing rule announced in *Mahler v. Szucs*, 135 Wn.2d 398, 957 P.2d 632, 966 P.2d 305 (1998), and elaborated upon in *Winters v. State Farm Mutual Automobile Insurance Co.*, 144 Wn.2d 869, 31 P.3d 1164 (2001), and *Hamm v. State Farm Mutual Automobile Insurance Co.*, 151 Wn.2d 303, 88 P.3d 395 (2004). This equitable rule is based upon the common fund exception to the well-known "American rule" on attorney fees, and it requires a personal injury protection (PIP) insurer to share pro rata in the attorney fees incurred by an injured person when the recovery benefits the PIP insurer.

¶2 The plaintiffs here recovered PIP funds as insureds, under policies held by the tortfeasors, and then incurred attorney fees in recovering from the tortfeasors' liability insurance provided by the same carrier. The insurance companies attempted to offset the funds expended under the PIP policies by reducing the plaintiffs' award under the tortfeasors' liability insurance. Relying on *Young v. Teti*, 104 Wn. App. 721, 16 P.3d 1275 (2001), the Court of Appeals held that in this factual scenario, neither plaintiff was entitled to recoup a pro rata share of attorney fees. While *Young* is on point, it was decided before *Hamm* and *Winters* and is inconsistent with those opinions. We therefore reverse the Court of Appeals and hold that the pro rata fee sharing rule applies in this context. We further hold that Karen Weismann is entitled to *Olympic Steamship*[1] fees on appeal and that Olga Matsyuk's bad faith claim against State Farm Fire and Casualty Company was improperly dismissed.

## FACTS AND PROCEDURAL HISTORY

### *Matsyuk*

¶3 Matsyuk was injured in an automobile accident while a passenger in a car driven by Omelyan Stemditskyy.

---

[1] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

Stemditskyy was at fault. As a passenger, Matsyuk was an insured under Stemditskyy's State Farm policy. Matsyuk received $1,874 in PIP benefits. As a claimant, she then sought to recover under Stemditskyy's liability policy provided by State Farm.

¶4 Matsyuk apparently reached a settlement with Stemditskyy and State Farm for $5,874, to be paid by State Farm in its capacity as Stemditskyy's liability insurer. State Farm indicated it would seek reimbursement of its previous PIP payments through an offset to the liability payment it was making on Stemditskyy's behalf and provided a check for $4,000 ($5,874 minus $1,874). Matsyuk demanded that State Farm bear a pro rata share of the legal expenses she incurred in obtaining the liability recovery, including the PIP offset. State Farm refused.

¶5 Matsyuk brought suit against State Farm for failing to share in her legal expenses, claiming bad faith, conversion, breach of contract, and Consumer Protection Act (ch. 19.86 RCW) violations. State Farm made a motion to dismiss Matsyuk's complaint for failure to state a claim on which relief can be granted under CR 12(b)(6). Matsyuk moved for partial summary judgment on the attorney fees question. The trial court denied the motion for summary judgment and granted State Farm's CR 12(b)(6) motion. Matsyuk appealed to Division One of the Court of Appeals, which affirmed the trial court, relying on *Young*, 104 Wn. App. 721, and distinguishing *Hamm*, 151 Wn.2d 303, and *Winters*, 144 Wn.2d 869. *Matsyuk v. State Farm Fire & Cas. Co.*, 155 Wn. App. 324, 332, 229 P.3d 893 (2010). Matsyuk petitioned for review.

*Weismann*

¶6 Weismann was operating her motorized wheelchair when she was struck by motorist Darlene Kangas. Kangas was insured by Safeco Insurance Company of Illinois. As a pedestrian, Weismann was an insured under Kangas's PIP policy and received $9,012.95 in PIP benefits. Weismann

sued Kangas, and Safeco, Kangas's liability insurer. The parties agreed that Weismann's damages totaled $44,521.19. *Weismann v. Safeco Ins. Co. of Ill.*, 157 Wn. App. 168, 172, 236 P.3d 240 (2010). Safeco offered Weismann $35,508.24, representing the difference between $44,521.19 and the money Weismann received in PIP benefits, $9,012.95. Because it offset the PIP amount, Safeco refused to pay a proportionate share of the attorney fees Weismann incurred in recovering from Kangas.

¶7 The parties entered into an agreement reserving Weismann's right to bring an action against Safeco on the question of its obligation to pay pro rata attorney fees. The matter proceeded to summary judgment on Weismann's motion. She argued that under *Winters*, 144 Wn.2d 869, and *Hamm*, 151 Wn.2d 303, Safeco was required to pay pro rata attorney fees. Safeco made a cross motion for summary judgment, arguing that under *Young*, 104 Wn. App. 721, it was not required to share in Weismann's legal expenses. The trial court agreed with Weismann that *Young* was no longer good law in light of this court's decisions in *Hamm* and *Winters* and granted her motion for summary judgment. It also granted Weismann's motion for attorney fees and costs under *Olympic Steamship*. Safeco appealed. Division Two reversed, relying on *Young* and distinguishing it from *Hamm* and *Winters*. It also reversed the trial court's award to Weismann of *Olympic Steamship* attorney fees. We granted Weismann's petition for review and consolidated this case with *Matsyuk*.

## ANALYSIS

¶8 The American rule on attorney fees provides that litigants must bear their own legal expenses. But many exceptions to this rule exist, and this court announced one such exception in *Mahler*, later expanding upon the exception in *Winters* and then *Hamm*. These cases recognize the obligation of a PIP insurer to share pro rata in the legal

expenses incurred by an injured person in recovering a common fund that accounts for PIP benefits. This has become known as the *"Mahler* rule." Before *Winters* and *Hamm* were announced, the Court of Appeals limited the reach of the *Mahler* rule in *Young*, concluding that it did not apply in this precise factual scenario, where the PIP and liability insurance are provided by the same insurer. We take this opportunity to disapprove of *Young*, as its rationale is inconsistent with the *Mahler* rule. *Winters* strongly suggests, and *Hamm* plainly requires, application of the equitable fee sharing rule here. We also reinstate the trial court's award of *Olympic Steamship* attorney fees to Weismann and reverse the dismissal of Matsyuk's bad faith claim.

A.   A common fund is created, thereby triggering the so-called *Mahler* rule, when the injured party recovers under a PIP policy held by the tortfeasor and also recovers under the tortfeasor's liability policy

¶9 An insurer that pays funds to an insured through a PIP policy may seek reimbursement if the PIP insured collects directly from an at-fault party. *Winters*, 144 Wn.2d at 876. When liability insurance is involved, one mechanism for achieving such reimbursement is through an " 'offset,' " which is "a credit to which an insurer is entitled for payments made under one coverage against claims made under another coverage within the same policy." *Id*. Reimbursement is appropriate so long as the injured party is made whole before any right to reimbursement is fulfilled. *Id*.

¶10 When an insured recovers funds from the at-fault party to which an insurer is entitled to reimbursement, those funds may constitute a common fund. The common fund doctrine provides an exception to the American rule on legal expenses. It "applies to cases where litigants preserve or create a common fund for the benefit of others as well as themselves." *Mahler*, 135 Wn.2d at 427. " '[W]hen one

person creates or preserves a fund from which another then takes, the two should share, pro rata, the fees and costs reasonably incurred to generate that fund.'" *Winters*, 144 Wn.2d at 877 (quoting *Winters v. State Farm Mut. Ins. Co.*, 99 Wn. App. 602, 609, 994 P.2d 881 (2000)). "[T]he rule requiring a pro rata sharing of legal expenses is based on equitable principles and not on construction of specific policy language." *Hamm*, 151 Wn.2d at 320 (citing *Winters*, 144 Wn.2d at 878-79).[2]

*1. Overview of our cases applying the equitable sharing rule*

¶11 This court has applied the equitable sharing rule in a number of contexts in the auto insurance world, beginning with *Mahler*. A brief review of our decisions is helpful.

*Mahler v. Szucs*

¶12 In *Mahler*, a no-fault injured person recovered under her State Farm PIP policy and later recovered from the tortfeasor's liability insurance carrier, American States. *Mahler*, 135 Wn.2d at 406-07. State Farm asserted a right to reimbursement for its PIP but maintained it need not share in Mahler's legal expenses incurred in recovering from American States. *Id.* at 407. This court concluded that State Farm was entitled to take reimbursement only if it paid its pro rata share of the attorney fees incurred by the injured person in recovering from the tortfeasor. *Id.* at 427. This share was measured by the proportion of the total recovery that represented the PIP payments.

---

[2] As the *Mahler* court observed:

"It is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the [insurer] as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share."

*Mahler*, 135 Wn.2d at 425 n.17 (quoting 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4903.85, at 335 (1981)).

### Winters v. State Farm

¶13 In *Winters*, a no-fault injured party recovered under her State Farm PIP policy. 144 Wn.2d at 873. The tortfeasor was underinsured, so in addition to recovering some funds from the tortfeasor's liability insurance, the injured party recovered from her underinsured/uninsured motorist (UIM) policy, also through State Farm.[3] *Id.* In seeking reimbursement for its PIP expenditure, State Farm contested its obligation to pay a pro rata attorney fee in this scenario. This court rejected that notion, holding that a common fund was created even though State Farm was on both sides of the ledger. *Id.* at 881. "[Here] the insured secured the proceeds from the at-fault driver or the driver's insurer and then recovered from his or her respective UIM carrier. These pooled funds became the common fund from which the PIP insurer was able to recoup payments it had made." *Id.* In so concluding, the *Winters* court recognized that "UIM payments are treated as if made by the tortfeasor." *Id.* at 880.

### Hamm v. State Farm

¶14 In *Hamm*, a no-fault motorist was injured in an accident with an uninsured tortfeasor (as opposed to in *Winters*, where the tortfeasor was underinsured). 151 Wn.2d at 306. She recovered under her State Farm PIP policy and then sought recovery from her UIM policy through State Farm. State Farm attempted to offset its PIP payment from Hamm's UIM award. This court held that in order to do so, State Farm must pay its pro rata share of the insured's legal expenses. *Id.* at 312. The *Hamm* court rejected the notion that because the UIM policy and the PIP

---

[3] Like *Mahler*, *Winters* was a consolidated case. The other plaintiff was Kyle Perkins. Both Winters and Perkins recovered under a combination of PIP, UIM, and the tortfeasor's liability insurance. *Winters*, 144 Wn.2d at 874-75. It should be noted, however, that Perkins was not driving his own automobile, but that of Glenn Smith. Thus, Perkins recovered under the tortfeasor's PIP and UIM policies through State Farm, not his own. *Id.*

were provided by the same carrier, State Farm received no "benefit" from the UIM payment. The court observed that the PIP and UIM policies were separate policies and concluded that "[t]he offset at issue in this case, just as in *Winters*, is a benefit to the PIP carrier, not the UIM carrier." *Id*. at 313. The court recognized its holding was a natural extension of its earlier cases, noting that "*Winters* already rejected the notion that a PIP carrier does not receive reimbursement from UIM payments when the PIP carrier and the UIM carrier are the same company." *Id*. at 313 n.5.

¶15 From these three cases, it is clear that the *Mahler* rule requires equitable fee sharing between an insured and insurer across the range of scenarios involving PIP reimbursement, including when the insured (1) recovers from the tortfeasor's liability policy provided by a different carrier than the PIP carrier (*Mahler*), (2) recovers from the insured's underinsured motorist policy provided by the same carrier as the PIP carrier (*Winters*), or (3) recovers from the insured's uninsured motorist policy provided by the same carrier as the PIP carrier (*Hamm*).

### *Young v. Teti*

¶16 The question we must resolve, then, is whether *Young* aligns with our case law developing the equitable fee sharing rule. As noted, the Court of Appeals issued its opinion in *Young* before *Winters* and *Hamm* were published.

¶17 In *Young*, an injured passenger, Patricia Young, received PIP benefits under an Allstate Indemnity Company policy of the at-fault driver, Victor Teti. Young also sued Teti for negligence. A jury awarded her $20,000. Teti proposed to offset the jury award by Allstate's earlier PIP payment to Young, and Young agreed, provided she be able to "deduct from the offset her attorney fees and costs under *Mahler*." *Young*, 104 Wn. App. at 723. The trial court agreed with Young and reduced Teti's offset to reflect a pro rata share of the attorney fees, but the Court of Appeals reversed. It reasoned:

[H]ere there is no contractual or legal basis for requiring Teti to share Young's litigation expenses in suing him and recovering damages. First, Young, the injured-plaintiff, was not Allstate's insured. Rather, Teti, the tortfeasor-defendant, was Allstate's insured, and Young was a third-party beneficiary under Teti's PIP coverage when his tortious conduct caused her harm. Second, under Teti's policy, Allstate was obligated to share an injured person's expenses in recovering PIP payments *only if Allstate also benefited*. But here, *Allstate did not benefit* from Young's lawsuit against Teti; rather, the lawsuit worked to Allstate's detriment when its insured, Teti, became liable to pay more money to Young.

Unlike *Mahler*, Young's litigation against Allstate's insured produced no additional party from whom Allstate could recoup any money. Thus, *Mahler* awards are inappropriate here, where an injured, faultless third person recovers only from the insured tortfeasor, rather than also from the injured party's own insurer.

*Young*, 104 Wn. App. at 726-27 (footnotes omitted).

¶18 The first rationale advanced by the court in *Young* for denying the equitable sharing rule in a situation such as the one at bar is that the injured plaintiff was not insured by the carrier but is a third-party beneficiary under the tortfeasor's PIP coverage. *Id.*[4] To the extent this rationale is premised on the contractual relationship between insurer and insured, it is unsupported by *Mahler*, *Winters*, and *Hamm*. The equitable sharing rule derives from principles of equity, not contract language. *Hamm*, 151 Wn.2d at 320 (citing *Winters*, 144 Wn.2d at 878-79). Indeed, one of the plaintiffs in *Winters* was also not a named insured, but rather covered under someone else's policy, and that fact made no difference to the *Winters* court. *See Winters*, 144 Wn.2d at 874-75 (Perkins case).

---

[4] The assertion that Young was merely a third-party beneficiary of Teti's policy is questionable. An injured passenger is generally insured under the driver's PIP, as in the present cases. There is no mention in *Young* of the terms of Teti's policy as to additional insureds.

¶19 *Young*'s second rationale is equally untenable. It reasoned that Allstate did not *benefit* from Young's lawsuit because the insurer had to pay twice (PIP and liability). *Young*, 104 Wn. App. at 727. This rationale is fundamentally the same as the rationale advanced by the insurer and rejected in *Winters* and again in *Hamm*. There, we held that an insurer receives a benefit when it is able to reimburse its PIP through funds from its UIM policy. *Hamm*, 151 Wn.2d at 313 n.5. The trial court in *Young* got it exactly right when it explained that

> "there is special funding under the PIP coverage in an insurance policy and there's funding under the liability coverage in an insurance policy. And they're not the same. They're two different categories under the insurance policy. . . . And if [Young] had not brought the case, Allstate would not get any setoff against any judgment. If there was no judgment, there would be no need for setoff. But [s]he brought the action, [s]he got the judgment, and you [Teti] are entitled to a setoff, I agree, but your setoff is going to be reduced."

*Young*, 104 Wn. App. at 724 (most alterations in original) (quoting Report of Proceedings (June 25, 1999) at 12). The Court of Appeals decision in *Young* must be disapproved in light of *Winters* and *Hamm*, and we take this opportunity to do so.

*2. A common fund is created when an injured person recovers under the tortfeasor's liability coverage after having recovered under a PIP policy by the same insurer*

¶20 Winters and Hamm recognize that PIP and UIM policies are distinct policies, even when provided by the same insurer. The same is true of liability coverage. Each policy is a separate silo, so to speak. Each offers discrete coverage, fulfills a particular need of the insured, and is based on a separate premium. *See Rones v. Safeco Ins. Co. of Am.*, 119 Wn.2d 650, 654-55, 835 P.2d 1036 (1992) (liability insurance); *Blackburn v. Safeco Ins. Co.*, 115 Wn.2d 82, 88-92, 794 P.2d 1259 (1990) (liability and UIM);

*Keenan v. Indus. Indem. Ins. Co. of Nw.*, 108 Wn.2d 314, 322, 738 P.2d 270 (1987) (UIM and PIP), *overruled on other grounds by Price v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 490, 946 P.2d 388 (1997). The distinction between a PIP and a UIM policy is what caused a majority of this court to twice reject the notion that reimbursing PIP payments with funds obtained from UIM coverage is merely moving money from one pot to another with no benefit to the insurer. *See Hamm*, 151 Wn.2d at 313 n.5 (quoting *Winters*).

¶21 There is no principled reason why the mechanism of a PIP offset against liability insurance payments should be treated differently from the mechanism of intercompany arbitration (at issue in *Mahler*) or a nonduplication of benefits clause between PIP and UIM coverage (at issue in *Winters* and *Hamm*). In each case, the insured's recovery of liability funds provides a benefit to the PIP insurer, creating a common fund. Accordingly, the equitable fee sharing rule applies. The Court of Appeals in these consolidated cases erred—just as the Court of Appeals in *Young* did—when it held otherwise.

¶22 Although the insurers do not advance a principled distinction between a UIM policy and a liability policy, they do advance a number of other arguments in defense of their position. First, they argue that the common fund doctrine is grounded in subrogation principles and that, in this scenario, they are left with no third party to subrogate. State Farm Fire & Cas. Co.'s Suppl. Br. at 17; Safeco's Appellants' Br. at 19-21. But the availability of subrogation is not relevant to the question of whether the equitable fee sharing rule applies when an insurer recovers PIP benefits by means of reimbursement or offset. *See, e.g., Hamm*, 151 Wn.2d at 319-20 (insurer's retention of right to pursue subrogation from tortfeasor does not eliminate obligation to pay proportional share of legal expenses for reimbursement of PIP benefits); *Winters*, 144 Wn.2d at 876 (reimbursement provisions of policy permit insurer to recover PIP benefits from money the insured collects from the tortfeasor, not-

withstanding absence of viable subrogation claim against tortfeasor); *see also Mahler*, 135 Wn.2d at 411-18 (discussing subrogation principles in relation to insurer's right to reimbursement).

¶23 Next, Safeco asserts that the collateral source rule compels a result in its favor. This argument also fails. Safeco's Suppl. Br. at 16-18. "The collateral source rule provides that a tortfeasor may not reduce its liability due to payments received by the injured party from a collateral source" when that source is independent of the tortfeasor. *Maziarski v. Bair*, 83 Wn. App. 835, 841 n.8, 924 P.2d 409 (1996). Thus, argues Safeco, if Weismann and Kangas went to trial, Kangas would be able to ask the jury to reduce her liability by the amount paid under the PIP, with no accounting for attorney fees. The Court of Appeals in *Matsyuk* endorsed this argument. *Matsyuk*, 155 Wn. App. at 334-35. *Mahler*, *Winters*, and *Hamm* do not address the collateral source rule as such, but nothing in these cases supports the view that the collateral source rule somehow trumps the equitable sharing rule in certain contexts. The collateral source rule is an evidentiary principle, not a cause of action. *See Mazon v. Krafchick*, 158 Wn.2d 440, 452, 144 P.3d 1168 (2006). The rule's application or nonapplication does not defeat a claim for equitable fee sharing.

¶24 State Farm also argues that the nonduplication of benefits clause in its policy vitiates application of the equitable sharing rule. But as Matsyuk points out, the nonduplication clause here does not apply because it provides that State Farm will not provide PIP benefits if the PIP insured has already received payment under liability coverage for the same damages as covered by the PIP. Matsyuk's Suppl. Br. at 10. More importantly,

> such clauses are valid only to the extent they serve as mechanisms to accomplish the PIP right to reimbursement when the same carrier provides PIP and UIM coverage. An insurance company, however, cannot avoid the pro rata sharing principle by characterizing such clauses as a limitation on UIM coverage

rather than a reimbursement offset based on previously paid PIP benefits.

*Hamm*, 151 Wn.2d at 311 n.4. The nonduplication clause does not excuse State Farm's obligation under the equitable sharing rule.

¶25 We hold that under *Mahler*, *Winters*, and *Hamm*, the liability funds recovered here created a common fund triggering the equitable fee sharing rule. To the extent the insurers here have recovered or seek to recover an offset against their PIP payouts, they must share in the plaintiffs' attorney fees on a pro rata basis. The contrary view of the Court of Appeals in *Young* is disapproved.

B.   Weismann is entitled to *Olympic Steamship* attorney
     fees

¶26 Weismann requests her reasonable attorney fees, including on appeal, under RAP 18.1 and *Olympic Steamship*, 117 Wn.2d 37. Weismann Pet. for Review at 23. Under *Olympic Steamship*, "[a]n insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract is entitled to attorney fees." 117 Wn.2d at 54. An insured cannot claim attorney fees where the dispute is over the extent of the insured's damages or factual questions of liability. *Godfrey v. Hartford Cas. Ins. Co.*, 142 Wn.2d 885, 899, 16 P.3d 617 (2001). RAP 18.1 provides a party may recover attorney fees on appeal if such fees are otherwise allowed by law and if the requirements of RAP 18.1 are met. *See, e.g.*, RAP 18.1(a)-(b) (requiring a requesting party to devote a section of its opening brief to the request). Weismann has met the procedural requirements under RAP 18.1, so the remaining question is whether she is entitled to recover the fees under law.

¶27 Weismann relies on this court's decision in *Safeco Insurance Co. v. Woodley*, 150 Wn.2d 765, 82 P.3d 660 (2004). There, as here, the court considered a dispute about whether the insurer was required to pay a pro rata share of

attorney fees under *Winters*. *Id*. at 772. Having concluded that Safeco was so required, the court next turned to Woodley's request for attorney fees.

> This case does not involve a dispute over the extent of Woodley's damages or factual questions regarding liability. Instead, it involves Woodley's right to receive the full benefit of her PIP and UIM coverages, which includes, under *Winters*, a pro rata share of the legal expenses she incurred in creating the common fund from which her PIP carrier received reimbursement. If Safeco were not compelled to pay its pro rata share of legal expenses, Woodley would not receive the full benefit of her coverage. Accordingly, this case appears "more akin to a dispute over the vindication of policy provisions to which the insured is entitled (for which fees may be awarded) than a dispute over the amount of coverage (for which fees are not available)."

*Id*. at 774 (quoting *Godfrey*, 142 Wn.2d at 899).

¶28 But before *Woodley*, the court in *Mahler* suggested that cases such as these do not involve a coverage dispute, but rather a dispute about the value of the right to reimbursement, for which *Olympic Steamship* fees are not appropriate. *Mahler*, 135 Wn.2d at 430-32 (concluding that the dispute between Mahler and State Farm was not a coverage dispute, but rather a dispute about the value of the right to reimbursement). *Woodley* did not discuss this portion of *Mahler*, nor has it been relied upon since.

¶29 As a matter of construction, when there is conflicting case law, *Woodley* should control, as this court's more recent pronouncement on the subject. *See Lunsford v. Saberhagen Holdings, Inc.*, 166 Wn.2d 264, 280, 208 P.3d 1092 (2009) (observing that "[a] later holding overrules a prior holding sub silentio when it directly contradicts the earlier rule of law").

¶30 But more importantly, the scenario we are faced with here is properly characterized as a coverage dispute, not as a dispute about the *value* of the reimbursement right. The question is a legal one involving interpretation of the insurance policy, not a factual one focused on the size of

the covered loss. This court said in *Colorado Structures, Inc. v. Insurance Co. of the West*:

> Since the question is a legal one, which required Structures to litigate to obtain a declaratory judgment ruling regarding the meaning of the contract, it is a *coverage dispute*. Generally, when an insured must bring suit against its own insurer to obtain a legal determination interpreting the meaning or application of an insurance policy, it is a *coverage dispute*. This case *would be* in the nature of a claims dispute if West had agreed to pay under the bond, but had a factual dispute with Structures as to the amount of the payment.

161 Wn.2d 577, 606, 167 P.3d 1125 (2007) (first and second emphasis added) (citing *Dayton v. Farmers Ins. Grp.*, 124 Wn.2d 277, 280, 876 P.2d 896 (1994)).[5]

¶31 The court in *Colorado Structures* then quoted Judge Morgan's opinion in the case, which observed, " '*Olympic Steamship* applies when an insurer or similar obligor contests the meaning of a contract, *but not* when it contests other questions as, for example, its liability in tort or the amount of damages it should pay.' " *Id.* at 606-07 (quoting *Colo. Structures, Inc. v. Ins. Co. of the W.*, 125 Wn. App. 907, 928, 106 P.3d 815 (2005)).

¶32 The equitable considerations that form the basis of the *Olympic Steamship* rule also counsel in favor of its application here. This court in *McGreevy v. Oregon Mutual Insurance Co.*, 128 Wn.2d 26, 39-40, 904 P.2d 731 (1995) held that, "when an insurer unsuccessfully contests coverage, it has placed its interests above the insured. Our decision in *Olympic Steamship* remedies this inequity by requiring that the insured be made whole." The *Olympic*

---

[5] We recognize that *Colorado Structures* does not have a majority rule on its main proposition regarding attorney fees, whether *Olympic Steamship* fees are available in the context of a performance bond as opposed to an insurance contract. But because we are squarely presented with an insurance contract here, we properly rely on *Colorado Structures'* discussion of the distinction between coverage and value in an *Olympic Steamship* dispute.

*Steamship* rule is principally designed to remedy the power disparity between parties.

> Other courts have recognized that disparity of bargaining power between an insurance company and its policyholder makes the insurance contract substantially different from other commercial contracts. *Hayseeds, Inc. v. State Farm Fire & Cas.*, [177 W. Va. 323,] 352 S.E.2d 73, 77 (W. Va. 1986). When an insured purchases a contract of insurance, it seeks protection from expenses arising from litigation, not "vexatious, time-consuming, expensive litigation with his insurer." 352 S.E.2d at 79. Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for damages to obtain the benefit of its insurance contract is irrelevant. In every case, the conduct of the insurer imposes upon the insured the cost of compelling the insurer to honor its commitment and, thus, is equally burdensome to the insured. *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73, 77 (W. Va. 1986); *cf. Security Mut. Cas. Co. v. Luthi*, 303 Minn. 161, 226 N.W.2d 878, 884 (1975). Further, allowing an award of attorney fees will encourage the prompt payment of claims. 352 S.E.2d at 79.

*Olympic S.S.*, 117 Wn.2d at 52-53 (footnote omitted).

¶33 The present case falls under the third category identified in *Olympic Steamship*, wherein an insured must file a suit for damages to obtain the benefit of the insurance contract. In the absence of *Olympic Steamship* fees, Weismann would not be made whole because the coverage she is entitled to would be diminished by the attorney fees she incurred to obtain it. Moreover, an insurer would have little economic incentive to provide coverage without a fight because the most the insurer would be required to pay if it lost the legal battle is what it should have paid in the first place. *See Colorado Structures*, 161 Wn.2d at 607 ("Without the application of *Olympic Steamship* and awarding attorney fees in addition to [coverage], an insurer would have absolutely no incentive to refrain from litigation over even the most clear coverage provisions."). The situation here is thus akin to the many cases where coverage was disputed

and we found *Olympic Steamship* fees appropriate. *See, e.g., Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 229 P.3d 693 (2010) (duty to defend case where coverage was found and *Olympic Steamship* fees ordered).

¶34 Consistent with *Woodley* and our case law discussing coverage disputes, Weismann is entitled to recover reasonable attorney fees, including on appeal under RAP 18.1.

C. Matsyuk's bad faith claim against State Farm may go forward

¶35 Matsyuk included a claim of bad faith in her complaint. The trial court dismissed the complaint based on CR 12(b)(6). "A trial court should grant a motion to dismiss pursuant to CR 12(b)(6) only 'if it appears beyond a reasonable doubt that no facts exist that would justify recovery.' " *Atchison v. Great W. Malting Co.*, 161 Wn.2d 372, 376, 166 P.3d 662 (2007) (quoting *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994)).

¶36 Matsyuk asserts that State Farm "refused to effectuate the agreed liability settlement on behalf of Stemditskyy unless plaintiff released her claims as a PIP insured against State Farm." Compl. at 3 (State Farm Fire & Cas. Co.'s Suppl. Br., App. 1). This is the basis of her bad faith claim: State Farm improperly leveraged its position as the holder of liability settlement funds. *See* Matsyuk Suppl. Br. at 11-12. State Farm contends that it simply asked Matsyuk to execute its standard liability release, and Matsyuk refused because she feared it would release her equitable fee sharing claim. State Farm claims the parties then negotiated a settlement that reserved any fee sharing claim.

¶37 The facts relating to this claim are disputed, but Matsyuk states a potential breach of State Farm's duty to treat its insured fairly, honestly, and in good faith. Because there is a viable legal claim and the facts are contested about the nature of the release sought, the trial court

should not have dismissed Matsyuk's bad faith claim. On this point, we reverse the Court of Appeals and remand to the trial court for consideration of Matsyuk's bad faith claim.

## CONCLUSION

¶38 This court's decisions in *Mahler*, *Winters*, and *Hamm* require application of the equitable fee sharing rule in this context. The Court of Appeals in *Young* erred when it held no common fund was created. We disapprove of *Young* and hold that a common fund is created, thereby triggering *Mahler*'s equitable fee sharing rule, when the injured party is insured under a PIP policy held by the tortfeasor and also recovers from the tortfeasor's liability policy. Further, Weismann is entitled to reasonable attorney fees under *Olympic Steamship*, including her fees on appeal under RAP 18.1. Finally, Matsyuk's bad faith claim was improperly dismissed and we remand it to the trial court for further proceedings consistent with this opinion.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, and WIGGINS, JJ., concur.

¶39 MADSEN, C.J. (dissenting) — Under the "common fund" equitable basis for an award of attorney fees, attorney fees may be awarded when a litigant preserves or creates a common fund for the benefit of the litigant and others. *See Mahler v. Szucs*, 135 Wn.2d 398, 426-27, 957 P.2d 632 (1998) (citing *Covell v. City of Seattle*, 127 Wn.2d 874, 891, 905 P.2d 324 (1995)). The common fund theory has been applied to require a PIP (personal injury protection) insurer to pay pro rata legal costs incurred by an injured insured to obtain a recovery from the responsible tortfeasor or the tortfeasor's insurer. The underlying theory is that the PIP insurer is benefited by the insured's creation of a common fund that inures to the benefit of the PIP insurer, in that without the

"common fund" the PIP insurer would not have this source of reimbursement for the PIP benefits paid.

¶40 Here, however, the majority applies the common fund doctrine to cases in which the equitable underpinnings for this category of attorney fee award do not exist. In each of these consolidated cases the tortfeasor's insurer paid PIP benefits pursuant to the tortfeasor's policy and then paid additional damages under the policy's liability coverage provisions. The so-called "common fund" in each case consisted solely of the insured's additional recovery under the liability coverage provisions, paid by the same insurer that also paid the PIP benefits. There was no creation of a common fund from which the PIP insurer benefited. Indeed, the fact that the majority subtly changes the theory from "common fund" to "equitable sharing" suggests the majority recognizes that it has really created a new equitable basis for attorney fees out of whole cloth. Accordingly, I dissent from the majority's application of the common fund theory.

¶41 In addition, I disagree with the majority's conclusion that *Olympic Steamship*[6] attorney fees are proper in the consolidated case of *Weismann v. Safeco Insurance Co. of Illinois*, 157 Wn. App. 168, 236 P.3d 240 (2010). First, the majority fails to follow the legally correct conclusion in *Mahler* that the pro rata attorney fee dispute is not a coverage issue. Second, the majority also erroneously says the pro rata fee dispute is a coverage issue because it involves interpretation of the policy provisions. It does not. I would hold that *Olympic Steamship* attorney fees are not awardable.

## Discussion

¶42 In each of these cases, the tortfeasor's insurance company paid PIP benefits, constituting special damages,

---

[6] *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991).

and then paid the insured's additional damages under liability coverage provisions of the tortfeasor's policy.

¶43 The United States Supreme Court has explained that it endorsed the common fund theory of attorney fees to further the interests of justice. *Summit Valley Indus., Inc. v. Local 112, United Bhd. Carpenters & Joiners of Am.*, 456 U.S. 717, 721, 102 S. Ct. 2112, 72 L. Ed. 2d 511 (1982) (citing *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116, 5 S. Ct. 387, 28 L. Ed. 915 (1885)). The equitable doctrine of the common fund is "grounded in dictates of public policy— fairness [and] is calculated to achieve equity." *Hamm v. State Farm Mut. Auto. Ins. Co.*, 151 Wn.2d 303, 326, 88 P.3d 395 (2004) (Sweeney, J. Pro Tem., dissenting).

¶44 In *Mahler* this equitable doctrine was first applied in this state to attorney fee-sharing reductions from PIP reimbursements. The application in this particular type of case is consistent with the equity theory of the common fund doctrine, which "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S. Ct. 745, 62 L. Ed. 2d 676 (1980). As we said in *Mahler*, it is inequitable to expect an insured who acts to protect his own interest, and thereby also protects the PIP insurer's interests, to pay for counsel entirely on his own. *Mahler*, 135 Wn.2d at 425 n.17 (quoting 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4903.85, at 335 (1981)); *see Hamm*, 151 Wn.2d at 327 (Sweeney, J. Pro Tem., dissenting).

¶45 But unless the injured insured obtains recovery of damages from a third party from which the PIP insurer can obtain reimbursement for the PIP benefits paid, there is no common fund. PIP and liability coverages overlap only as to payment of special damages. When only the tortfeasor's insurer pays PIP benefits and then pays the insured's damages over and above the PIP payment, there is no duplication in benefits paid and no fund that will constitute

a source of reimbursement for the PIP benefits paid. Most importantly, the tortfeasor's insurance company does not benefit from recovery from *itself*. There is no "common fund," no possibility of any actual reimbursement for PIP benefits, and no benefit to the insurance company as a result of the insured's counsel's efforts, and the insurance company is not unjustly enriched. *See Hamm*, 151 Wn.2d at 327-28 (Sweeney, J. Pro Tem., dissenting).

¶46 In contrast, in *Mahler*, *Winters v. State Farm Mutual Automobile Insurance Co.*, 144 Wn.2d 869, 885, 31 P.3d 1164, 63 P.3d 764 (2001), and *Safeco Insurance Co. v. Woodley*, 150 Wn.2d 765, 771-72, 82 P.3d 660 (2004), the insureds recovered moneys from third parties, thus creating a common fund from which the PIP insurer could recoup payments made. In *Mahler*, a common fund was created solely from a third party recovery; in *Winters*, a common fund was created from a combination of UIM (uninsured or underinsured motorist) proceeds and a third party recovery; and in *Woodley*, there was again a combination of a third party recovery and UIM proceeds. *Hamm*, 151 Wn.2d at 330 (Sweeney, J. Pro Tem., dissenting). There is no similar situation in the present case.

¶47 The majority, however, believes it is appropriate to treat the insurer as if it is two separate sources of funds, maintaining that the PIP coverage and the liability coverage are distinct policies even if provided by the same insurer. Majority at 655-56. The majority analogizes the present cases to *Winters* and *Hamm*, cases in which the insured received PIP benefits and UIM coverage. But the cases are not comparable.

¶48 In *Hamm*, the court reasoned that even though the same insurer paid PIP and UIM benefits, in its position as the UIM insurer the company stood in the shoes of the tortfeasor. *Hamm*, 151 Wn.2d at 308 ("[f]or purposes of UIM coverage, the insurance carrier is said to stand in the shoes of the tortfeasor, and payments made by the UIM carrier are treated as if they were made by the tortfeasor"). In this

role the carrier was treated as distinct from the carrier in its role as PIP insurer.[7]

¶49 Even if one agrees with the analysis in *Hamm*, there is no comparable basis for treating the tortfeasor's insurer providing both PIP and liability coverage as if it were two entities. The PIP insurer and the liability insurer are the same entity standing only in the role of the tortfeasor's insurer. The insurer represents no other person or entity. This is unlike the situation in *Hamm*, where the insurer was the injured insured's own insurance company for PIP coverage but was effectively the tortfeasor insofar as UIM coverage was concerned. The same is true of the UIM coverage in *Winters*, although in *Winters* the insured also recovered some funds directly from the underinsured tortfeasor's liability insurance.

¶50 When the tortfeasor's insurer pays PIP benefits and then pays additional damages under the liability coverage when it is legally compelled to do so, the insurance company is not unjustly enriched as a result of the insured's counsel's legal efforts in obtaining the additional payment. There is no common fund from which the insurer benefits.

¶51 Finally, on this issue, as I explained in *Hamm*, the question is not whether an identically injured plaintiff entitled to the same PIP and liability proceeds ends up with the same amount of dollars in his or her pocket after paying attorney fees. If a "common fund" equitable ground for an award of attorney fees is the recognized ground in equity for an attorney fee award in these cases, as it is, then there

---

[7] I did not join the court's treatment of the insurer in *Hamm* as if it were two distinct sources of compensation for the injured insured. We are dealing in equity in these pro-rata-legal-fee cases, and the factual certainty is that only one insurer was involved in *Hamm*, just as there is only one insurer in the consolidated cases presently before us. Justice Pro Tempore Sweeney provided a number of reasons why the insurer in *Hamm* should not have been required to pay a share of the injured insured's legal fees, but one of the most striking is that the insurance company was in essence the *losing* party in the arbitration proceeding there. *Hamm*, 151 Wn.2d at 327 (Sweeney, J. Pro Tem., dissenting). The PIP benefits were never at issue and did not require the efforts of an attorney. *Id.* The only dispute was the UIM coverage, and on this question, the insurer lost. *Id.*

must actually be a common fund from which the PIP insurer benefits. There is none in these cases. "[O]nly *one* insurance company has paid all the funds . . . and it has not benefited by any funds obtained from any other source. The insurance company can hardly be said to have benefited from its own payments" when it is the only one making any payment. *Hamm*, 151 Wn.2d at 322 (Madsen, J., concurring in dissent).

¶52 The majority misapplies the common fund doctrine.

¶53 Next, I turn to the issue of *Olympic Steamship* attorney fees in *Weismann*. We held in *Mahler* that a dispute about whether the insurer must pay a proportionate share of attorney fees in order to effect a right to reimbursement for PIP benefits paid is not a coverage dispute. *Mahler*, 135 Wn.2d at 431-32. In such cases, the issue is the value of the right of reimbursement, not whether the insurer has a right to be reimbursed for PIP benefits paid. *Id*. at 432. *Olympic Steamship* fees are not awardable under such circumstances, as the court correctly determined in *Mahler*.

¶54 The majority says, however, that *Olympic Steamship* fees were awarded in *Woodley*, and because *Woodley* is a later case, it should control on the basis that it overruled *Mahler* sub silentio.

¶55 I agree that a subsequent case can overrule a prior one sub silentio, but I think the principle deserves some care in its application because the real question is whether the first or the subsequent case should be followed as having properly stated the law. I believe the explanation given in *Woodley* for allowing *Olympic Steamship* fees actually discloses why they should *not* have been awarded. The court in *Woodley* said that the case involved the insured's "right to receive the full benefit of her PIP and UIM coverages" and that because the insured would not receive the full benefit of her coverage if the insurer was not required to pay a pro rata share of attorney fees, the dispute is more like a dispute over vindication of policy provisions

to which the insured is entitled. *Woodley*, 150 Wn.2d at 774. But the *"full benefit* of her . . . coverages" in *Woodley, id.* (emphasis added), was about the amount of money the insured ultimately received and not a question of whether she had coverage or what type of coverage she had. There was simply no question that the injured party was entitled to PIP and UIM coverage.

¶56 I believe that *Mahler* contains the better analysis and that the court should apply it rather than *Woodley*. Indeed, this case presents the opportunity to correct the misstep taken in *Woodley*.

¶57 In *Weismann*, no dispute exists that *if* a common fund was created by the insured's counsel from which the insurer may be reimbursed for PIP benefits paid, then Safeco would be entitled to reimbursement only as reduced by a pro rata share of reasonable attorney fees paid by the insured to obtain a recovery. But whether a common fund is created is not a coverage question under the policy provisions. It is a question wholly outside the coverage questions.

¶58 *If* a common fund is created, the sole question then is the value of the insurer's reimbursement right, i.e., how much the PIP insurer is entitled to as reimbursement after paying a portion of the insured's attorney fees. This is not a coverage question, either, as *Mahler* properly explains. Accordingly, even assuming that a common fund was created and that Safeco is obligated to pay a pro rata share of the attorney fees expended to create it, no coverage question arises, contrary to the majority's position. *Olympic Steamship* attorney fees are not appropriate.

¶59 The majority also says that *Olympic Steamship* fees are appropriate because the question here is "one involving interpretation of the insurance policy." Majority at 659-60. The majority points out that when an insured must bring a suit against its own insurer to obtain an interpretation of the insurance policy, it is a coverage dispute. Majority at 660 (quoting *Colo. Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 606, 167 P.3d 1125 (2007)).

¶60 But the pro rata attorney fee issue is not a question of interpreting the insurance policy, as the majority itself correctly states. " '[T]he rule requiring a pro rata sharing of legal expenses is based on equitable principles and not on construction of specific policy language.' " Majority at 651 (alteration in original) (quoting *Hamm*, 151 Wn.2d at 320). The majority is incorrect, as well as inconsistent, when it says that the pro rata sharing issue involves construction of policy terms.

¶61 Lastly, on the issue of *Olympic Steamship* attorney fees, the majority does not discuss the matter, but presumably there can be no duplication of fees—after all, the majority is already directing that the insurance company pay a pro rata share of attorney fees incurred by the insured to obtain liability benefits under the Safeco policy. The insurer should not have to pay twice for the same legal work.

Conclusion

¶62 The majority applies the equitable "common fund" theory as the basis for requiring the PIP insurers in these cases to pay a pro rata share of the attorney fees incurred by the insureds to create so-called "common funds" from which the insurers benefit. But in each case, the tortfeasor's insurance company, acting *only* on behalf of the tortfeasor, provided both the PIP and liability coverage. There was no common fund created as a result of the insured's incurrence of legal fees and the insurer was certainly not unjustly enriched by being legally compelled to pay the additional damages. The only "fund" was the amount that the insurer itself paid, and the insurer did not benefit from the insured's success in obtaining the recovery paid by the insurer itself.

¶63 In any case, *Olympic Steamship* attorney fees are inappropriate in Ms. Weismann's case. The dispute over whether Safeco must share legal fees on a pro rata basis

based upon the common fund doctrine is not a coverage question as claimed. Further, the issue does not involve construction of the insurance policy, contrary to the majority's view. Finally, given that the majority nevertheless requires Safeco to pay pro rata legal costs of Ms. Weismann's recovery *and also* pay *Olympic Steamship* attorney fees, care should be taken to ensure that imposition of these two types of attorney fees do not result in Safeco paying the same legal expenses twice.

¶64 I would affirm the holdings of the Court of Appeals in these cases, for the reasons stated in this opinion. I dissent from the majority opinion.

J.M. JOHNSON, J., and ALEXANDER, J. PRO TEM., concur with MADSEN, C.J.